**KENNETH H. HUGHES INTERESTS, INC., H. Peter Norstrand, Thomas G. Eastman, and John L. Patillo, Trustees of AEW # 22 Trust, Appellants,**

v.

**William WESTRUP, Jr., Shari Westrup, and Shartrue's, Inc., Appellees.**

No. 01–92–01014–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 19, 1994.

Ramsey & Murray, P.C., Houston, for appellants.

Crady, Jewett & McCulley, L.L.P., A. Randall Friday, Houston, for appellees.

Before DUGGAN, HUTSON–DUNN and ANDELL, JJ.

## OPINION

DUGGAN, Justice.

The appellees have filed a motion for rehearing. We overrule the motion, but with-

draw our previous opinion, and issue this one in its stead.[1]

The appellees obtained a jury verdict against the appellants in a lawsuit brought for violations of the Deceptive Trade Practices Act [2] (DTPA) and breach of warranty. We affirm in part, reverse and render in part, and remand in part.

### The Facts

In 1986, Shari and William Westrup (the Westrups) opened Shartrue's, a ladies' upscale shoe store. Shartrue's, Inc., was a Texas corporation. The Westrups were shareholders; Shari was president and William was vice-president. The store was located in a shopping center close to the Pavilion shopping center (the Pavilion) on South Post Oak in Houston.

In 1988, the AEW Trust (AEW) purchased the Pavilion. AEW and Kenneth H. Hughes Interests, Inc. (Hughes), a real estate developer, began to develop and refurbish the Pavilion. Desiring to add an elegant, stylish shoe store to the Pavilion's assortment of shops, AEW and Hughes approached the Westrups about moving Shartrue's to the Pavilion. The Westrups were receptive to the overtures.

In developing the Pavilion, AEW and Hughes contracted with Hayman Construction (Hayman) for construction work. Hayman hired T.D. Mechanical, Inc. (TDM), as a mechanical subcontractor.

Some time in mid–1988, unknown to any of the parties to this lawsuit, a construction accident occurred in the development. A Hayman employee operating a backhoe struck a storm sewer drain pipe, shattering part of it. The employee covered the broken section of pipe with dirt and proceeded with his job. The damage was not repaired.

On November 7, 1988, AEW and Shartrue's, Inc. entered into a lease providing for Shartrue's, Inc.'s use of retail space at the Pavilion. The lease lists "Shartrue's, Inc., a Texas corporation" as the tenant. The lease is signed for the tenant, again listed over the signature line as "Shartrue's, Inc., a Texas corporation," by William Westrup, as "its [Shartrue's, Inc.'s] vice-president."

In January 1989, William Westrup noticed water bubbling up through a crack in the slab at the Pavilion. The crack was in the Pavilion's hall outside a vacant store space next to Shartrue's, Inc.'s space. A wet spot appeared on Shartrue's carpet. Westrup reported the problem, and was told by Kenneth Hughes that it would be fixed.

In an attempt to discover the reason for the water's emergence, a hole was broken in the slab in the vacant lease space next to Shartrue's. The attempt was unsuccessful. The hole in the slab, however, was not repaired. The Westrups were not told that the problem had not been corrected.

On January 23, 1989, Shartrue's opened for business at the Pavilion. On May 17, and again on May 18, the store flooded. The water flowed from the pipe broken by the backhoe, traveled up through the hole in the lease space next door, and entered Shartrue's. The water damaged parts of the store.

The Westrups rebuilt part of Shartrue's interior. William Westrup was told that the flooding problem was being corrected. The cause of the flooding, however, was still not detected.

On June 26, 1989, the store flooded again. The interior was damaged again and the store had to be rebuilt. The cause of the flooding was finally located, and the pipe repaired.

Shartrue's reopened in September 1989. However, the store, unable to recover from its setbacks, ceased operation in March 1990. Shartrue's, Inc. and the Westrups sued AEW, Hughes, Hayman, and TDM, alleging DTPA violations, breach of the warranty of commercial habitability, and negligence. On the day before trial, Shartrue's, Inc. and the Westrups settled with Hayman and TDM.

Shartrue's, Inc. and the Westrups proceeded to trial against AEW and Hughes on their DTPA and breach of warranty causes of

---

1. We previously overruled, without opinion, a motion for rehearing filed by the appellants.

2. Tex.Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1987).

action. The jury found that AEW and Hughes committed false, misleading, or deceptive acts or practices, and did so knowingly; that AEW and Hughes breached the warranty of commercial habitability, and did so knowingly; and that Shartrue's, Inc. and the Westrups did not waive the warranty. The jury awarded Shartrue's, Inc. $23,000 for its repair costs and expenses, and awarded each of the Westrups $250,000 for lost investments. The jury also awarded attorneys' fees.

### Point of Error One: Indemnity

In their first point of error, AEW and Hughes contend that the trial court erred in denying them "contractual indemnity from [Hayman]."

AEW and Hughes pled for contractual indemnity from Hayman. The contract between AEW, who, it is undisputed, was represented by Hughes, and Hayman was admitted into evidence at trial. It states in relevant part:

> Contractor agrees to [ ] indemnify ... each of Owner, Owner's Representative ... from and against any and all claims, liens, demands, and causes of action of every kind and character ... arising out of, or in anywise incident to, the performance of the Work to be performed by Contractor under the Contract Documents.... [T]he indemnity provided for ... is indemnity ... from the consequences of the negligence of Owner, Owner's Representative ... *except insofar as ... any claim arises out of the sole and gross negligence or willful misconduct of Owner....*

(Emphasis added.)

■ AEW and Hughes argue that the indemnity clause "clearly satisfies the express negligence test making the contract enforceable and is conspicuous enough to give fair notice of its existence as it is set forth in a separate paragraph entitled 'Indemnity.'" We agree that the indemnity clause is enforceable and conspicuous enough to give Hayman fair notice of its existence. The question, though, is whether the clause's language, while enforceable, does in fact entitle AEW and Hughes to indemnity from Hay-

man under the facts of this case. The clause exempts a claim "aris[ing] out of the ... gross negligence of" AEW and Hughes. As noted above, the jury found that AEW and Hughes committed false, misleading, or deceptive acts or practices, and did so knowingly, and that AEW and Hughes breached a warranty of commercial habitability, and did so knowingly.

In addressing this issue, both sides refer to *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex.1984). AEW and Hughes argue that, under *Luna*, a finding that acts were committed "knowingly" is not equivalent to a finding that acts were "willful misconduct," one standard that AEW's and Hughes' acts had to meet in order to preclude indemnity. Shartrue's, Inc. and the Westrups argue that, because AEW and Hughes were not entitled to indemnity for gross negligence, they also cannot be so entitled for conduct that was committed "knowingly," because, under *Luna*, "knowingly" is a more culpable standard than gross negligence.

We agree with Shartrue's, Inc. and the Westrups. In *Luna*, the Supreme Court of Texas held that when an actor commits a wrongful act "with actual awareness of the falsity, deception or unfairness of the act, then this is a more culpable mental state than one who is grossly negligent." 667 S.W.2d at 118. The court noted that "the terms gross negligence, 'knowingly,' 'willful' and intentional" are not equivalent. *Id.* "These terms lie on a continuum with gross negligence being the lowest mental state and intentional being the highest." *Id.* "Knowingly," therefore, is a more culpable standard than "grossly negligent." *See id.*

■ In construing an indemnity contract, our primary concern is to ascertain the true intentions of the parties. *Crown Central Petroleum Corp. v. Jennings*, 727 S.W.2d 739, 741 (Tex.App.—Houston [1st Dist.] 1987, no writ). We seek to reach a "common sense" reading of the indemnity agreement. *Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.*, 778 S.W.2d 492, 502 (Tex. App.—Dallas 1989, writ denied), *cert. denied,*

498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 115 (1990).

It is undisputed that, under the contract, AEW and Hughes are not entitled to indemnity for their own gross negligence. In determining the intent of the parties, and in reading the contract in the light of common sense, we do not believe that the parties intended that there be no indemnity for gross negligence, and yet that there be indemnity for knowing conduct, *a more culpable standard than gross negligence.* To accept AEW's and Hughes' argument would mean holding that the intent of the parties was that the indemnitees would not be entitled to indemnity for an act done with the mental state at the low end of the "continuum" of culpable mental states, but *would* be so entitled for an act done with a mental state that is higher on the scale, i.e., an act that is *more* culpable than another for which they indisputably are not entitled to indemnity. We hold that the contract does not entitle AEW and Hughes to indemnity from Hayman.

■ In so holding, we reject AEW's and Hughes' statement that, because Shartrue's, Inc., and the Westrups stipulated at trial that Hayman was negligent and that their claims arose from Hayman's construction work, the stipulations "eliminate[d] the exceptions to the indemnity contract of 'sole and gross negligence or willful misconduct' and brings their claims within coverage of the indemnity clause." This statement is unsupported by either argument or authority. In any event, Shartrue's, Inc. and the Westrups could not bind Hayman to pay indemnity by stipulating that Hayman, a party not represented at trial, was negligent. An entity that is not a party to a stipulation is not bound by that stipulation. *United Servs. Auto. Ass'n v. Ratterree,* 512 S.W.2d 30, 34 (Tex.Civ.App.— San Antonio 1974, writ ref'd n.r.e.). Hayman's liability, or lack of same, under the indemnity provision is not an issue that could be properly decided by a stipulation made by parties other than Hayman at a trial in which Hayman did not participate.

We overrule point of error one.

## Point of Error Two: Credit

■ In point of error two, AEW and Hughes contend that the trial court erred in denying them a credit for the $770,000 paid to the plaintiffs by settling defendants Hayman and TDM. AEW and Hughes pled for such a credit.

The disposition of this point of error is controlled by *Stewart Title Guaranty Co. v. Sterling,* 822 S.W.2d 1 (Tex.1991). In that case, the Supreme Court of Texas held that "[t]here can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability does not modify this rule." *Id.* at 8.

Here, there is no doubt that more than one defendant caused the injury; the jury found that AEW's and Hughes' DTPA violations and their breach of warranty were "a producing cause of damages" to Shartrue's, Inc. and the Westrups. There was also more than one theory of liability; Hayman, TDM, AEW, and Hughes were all sued for DTPA violations, breach of warranty, and negligence.

There was, however, only one *injury* in this case: the financial ruin of Shartrue's. *Sterling* and another supreme court decision, *Ojeda de Toca v. Wise,* 748 S.W.2d 449 (Tex. 1988), support this conclusion.

In *Sterling,* the plaintiff purchased land under the belief that he was obtaining title to three strategically important lots. 822 S.W.2d at 8. The settling defendants misrepresented to the plaintiff that he would receive good title to the lots. *Id.* The nonsettling defendant's agent made the same misrepresentation. *Id.* The separate acts of the defendants produced "only one injury, namely, [the plaintiff's] failure to obtain ownership of the three lots." *Id.* The court held that the nonsettling defendant was therefore entitled to receive a credit on the judgment. *Id.*

In *Wise,* the plaintiff purchased a house from a development company. 748 S.W.2d at 450. Following the demolition of the house by the City of Houston, the plaintiff sued the development company, its owner, and two

title insurance companies. *Id.* The title insurance companies eventually settled. *Id.*

In its opinion in *Sterling*, the court noted that it had "treated the acts of all the defendants in *Wise* as causing a single injury and did not preclude the nonsettling defendant from obtaining a credit based on the prior settlement." 822 S.W.2d at 7. The court held that the plaintiff "suffered one injury, i.e., the destruction of her home." *Id.*

In *Sterling*, the injury was the plaintiff's failure to acquire ownership in the three pivotal lots. 822 S.W.2d at 8. In *Wise*, the injury was the annihilation of the plaintiff's home. *Id.* at 7. Here, as in those cases, there was a single injury: the financial destruction of Shartrue's.

We hold that AEW and Hughes are entitled to a credit for the $770,000 paid to the plaintiffs by settling defendants Hayman and TDM. *See Sterling*, 822 S.W.2d at 10. We sustain point of error two.[3]

**Point of Error Three:  Consumer Status**

In point of error three, AEW and Hughes contend that the trial court erred in holding that the Westrups were "consumers" under the DTPA and therefore in submitting questions to the jury allowing the jury to award them damages as consumers. AEW and Hughes contend that only Shartrue's, Inc. qualifies as a consumer here for the purpose of recovering damages under the DTPA. In part of point of error six, AEW and Hughes argue in part that the trial court erred in submitting the jury questions on the issue of breach of warranty of commercial habitability as to the Westrups, because "the cause of action belonged to the corporation." Because both contentions involve the Westrups'

capacity to recover personally in this case, we discuss the two issues together.

■  Whether a plaintiff is a "consumer" under the DTPA is a question of law. *Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex. App.—Fort Worth 1991, writ denied). A DTPA "consumer" is "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services...." TEX.BUS. & COM.CODE ANN. § 17.-45(4) (Vernon 1987). The only "good" or "service" involved in this case is the lease space at the Pavilion into which Shartrue's moved.[4]

■  The Westrups, however, were not the consumers of the lease space; Shartrue's, Inc. was. It was Shartrue's, Inc. that entered into the lease providing for Shartrue's use of retail space at the Pavilion. The lease designates "Shartrue's, Inc., a Texas corporation" as the tenant. The lease is signed for the tenant, again listed over the signature line as "Shartrue's, Inc., a Texas corporation," by William Westrup, as "its [Shartrue's, Inc.'s] vice-president."

A corporation and its shareholders are different legal entities. *City of Woodway v. United States*, 681 F.2d 975, 980 (5th Cir. 1982). "[A] corporation is an entity separate and apart from its stockholders...." *Gossett v. State*, 417 S.W.2d 730, 735 (Tex.Civ. App.—Eastland 1967, writ ref'd n.r.e.). Here, the record demonstrates that it was the corporation, Shartrue's, Inc., that was the consumer, not the Westrups.

■  Shartrue's, Inc. and the Westrups argue that the Westrups are consumers because the Westrups "suffered injuries separate and distinct from those of Shartrue's, in

---

**3.** In so doing, we reject Shartrue's, Inc.'s and the Westrups' argument that AEW and Hughes "waived any right to a credit" because they "failed to obtain jury findings that [Shartrue's, Inc.'s and the Westrups'] injuries were indivisible, or that appellants and Hayman were joint tortfeasors." There was no such requirement here, where only a credit was sought. *Sterling*, 822 S.W.2d at 9 n. 10; *see Schering Corp. v. Giesecke*, 589 S.W.2d 516, 519 (Tex.Civ.App.— Eastland 1979, writ ref'd n.r.e.).

Shartrue's, Inc. and the Westrups also assert that *Providence Hospital v. Truly*, 611 S.W.2d 127

(Tex.Civ.App.—Waco 1980, writ dism'd), applies here to preclude entitlement to a credit. That case, however, was explicitly disapproved in *Sterling*. 822 S.W.2d at 10 n. 12.

**4.** Shartrue's, Inc. and the Westrups acknowledge this in their brief. The only "good" they discuss is the lease space, and they discuss no particular "service." They state in part: "Bill Westrup and Shari Westrup ... sought and acquired goods and services. They individually acquired the benefits of the lease...."

that each suffered loss of investment as a result of appellants' DTPA violations." This argument presumes that the question of a party's consumer status is determined by whether its "injuries" are different from the injuries suffered by a party that is a bona fide consumer. Furthermore, Shartrue's, Inc. and the Westrups cite no authority for the proposition that an investor can recover for loss of his or her investment in a corporation. We find the law to be to the contrary.

When a shareholder is injured by an allegedly wrongful act that financially damages the corporation, the shareholder is made whole if the corporation obtains restitution or compensation from the alleged wrongdoer. *See Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex.1990). The shareholders who invested their own money in the corporation are not directly injured by the corporation's financial damage; they no longer had the money that was lost, having invested it in the corporation. Instead, they have shares. If the *corporation* recovers, the money the corporation lost is restored, and thus the shareholders' investments are restored. However, the restoration is to the corporation, *not* the individual shareholders. *See id.* The shareholders benefit by the increase in the value of their shares. *See id.* This is their only benefit; they cannot recover *personally. See id.*

The Westrups may not recover by virtue of their status as shareholders in Shartrue's, Inc., the entity that sustained the damage. "A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong." *Wingate*, 795 S.W.2d at 719. "Even though stockholders may sustain indirect losses, they have no independent right to bring an action for injuries suffered by the corporation." *White v. Independence Bank, N.A.*, 794 S.W.2d 895, 898 (Tex.App.—Houston [1st Dist.] 1990, writ denied). An action for damages to corporate assets must be brought by the corporation. *Id.* This rule avoids the "multiplicity of suits" that would occur if individual shareholders could sue for damage done to a corporation. *Id.*

Shartrue's, Inc. and the Westrups point out that the Westrups were guarantors on the lease. They were limited guarantors to a maximum of $60,000.

■ Shartrue's, Inc. and the Westrups offer no authority or reasoning for the proposition that a limited guarantor on a lease qualifies as a "consumer" under the DTPA, or that such a guarantor, even presuming consumer status, *could bring a personal cause of action for damage done to a corporation.* A guarantor is one who is answerable for the debt or obligation of another in the event that the other does not pay the debt or meet the obligation. *Simmons v. Compania Financiera Libano, S.A.*, 830 S.W.2d 789, 792 (Tex.App.—Houston [1st Dist.] 1992, writ denied). The Westrups' status as persons who promised to answer for the obligations of Shartrue's, Inc. under the lease, should Shartrue's, Inc. fail to meet its obligations, does not provide the necessary logic for us to hold that the Westrups are consumers, particularly when their obligations as guarantors are not an issue in this appeal.

. ■ We hold that the Westrups were not consumers here. Under the same corporation-shareholder case law cited above, we also hold that the Westrups were precluded from recovering personally on the breach of warranty of commercial habitability claim; that claim, too, belonged only to the corporation.

We sustain point of error three.

### Points of Error Four and Five: Lost Investment Damages

In point of error four, AEW and Hughes contend that the trial court erred in submitting a damages question to the jury inquiring about "lost investment" suffered by the Westrups. In point of error five, AEW and Hughes assert that there was insufficient evidence to support the jury's findings on "lost investment" damages.

In sustaining point of error three, we held that the Westrups were not consumers under the DTPA. Because they were not consumers, they could not recover under the Act. *See Taylor v. GWR Operating Co.*, 820 S.W.2d 908, 910 (Tex.App.—Houston [1st Dist.] 1991, writ denied). We also held that they could not recover for breach of warran-

ty of commercial habitability, because that claim, like the DTPA claim, belonged only to the corporation, Shartrue's, Inc.

As such, the damages recovered by them personally—the "lost investment" damages—cannot stand. Because we have already taken away those damages, we need not consider points of error four and five, which seek the same relief—deprivation of the damages awarded to the Westrups personally—that was sought under point of error three.

### Point of Error Six: Warranty of Commercial Habitability

In point of error six, AEW and Hughes argue that the trial court erred in submitting questions to the jury on the issue of breach of warranty of commercial habitability because the warranty "was waived as a matter of law." In the same point of error, as noted above, they assert that the trial court erred in submitting the jury questions on that issue as to the Westrups, because "the cause of action belonged to the corporation."

We agreed above that the breach of warranty cause of action, like the DTPA claim, belonged solely to the corporation. Because we have thus already held that the Westrups cannot recover any personal damages in this case, we will consider point of error six only as it relates to the recovery made by Shartrue's, Inc.

The trial court submitted separate questions on (1) breach of warranty, and (2) false, misleading, or deceptive acts or practices. The jury found that AEW and Hughes breached the warranty of commercial habitability and that the Westrups did not waive the warranty. It also found that AEW and Hughes committed false, misleading, or deceptive acts or practices. The damages questions, however, did not instruct the jury to allocate the amount of damages found between the two claims. The questions do

not specify what amount of damages is due to what particular claim.

■ AEW and Hughes did not object to the broad form of the questions, i.e., that the questions do not segregate the damages. Nor did they tender proposed instructions segregating damages between the two claims.

Even if the trial court erred in submitting questions to the jury on the issue of breach of warranty of commercial habitability—an issue we do not decide—damages for the DTPA claim alone are sufficient to support the award. *See American Baler Co. v. SRS Sys., Inc.*, 748 S.W.2d 243, 249 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *see also Sterling*, 822 S.W.2d at 4 n. 3.

We overrule point of error six.

### Point of Error Seven and Cross-point One: Attorneys' Fees

■ In point of error seven, AEW and Hughes assert that the trial court erred in submitting a question on attorneys' fees, because Shartrue's, Inc. and the Westrups did not segregate the fees by amount spent prosecuting the suit against each individual defendant, some of whom settled before trial.[5]

The Supreme Court of Texas stated the applicable rule in *Sterling*:

> When a plaintiff seeks to recover attorney's fees in cases where there are multiple defendants, and one or more of those defendants have made settlements, the plaintiff must segregate the fees owed by the remaining defendants from those owed by the settling defendants so that the remaining defendants are not charged fees for which they are not responsible.

822 S.W.2d at 10–11.

Here, the plaintiffs sued multiple defendants. Two of the defendants, Hayman and

---

**5.** We held above that the Westrups are not entitled to their awards of $250,000. We also held above that AEW and Hughes are entitled to a credit of $770,000 against the $23,000 in damages awarded to Shartrue's, Inc. The result of this latter holding is that Shartrue's, Inc. receives no net recovery from the trial. However, despite receiving no net recovery from the trial, Shartrue's, Inc. is nevertheless entitled to recover

attorneys' fees under the DTPA. *See McKinley v. Drozd*, 685 S.W.2d 7, 10 (Tex.1985) ("[W]e hold that a consumer who is awarded actual damages under the DTPA should also be awarded attorney's fees, even though ... the DTPA consumer receives no net recovery."); *De La Rosa v. Kaples*, 812 S.W.2d 432, 434 (Tex.App.—San Antonio 1991, writ denied). We therefore reach the issue of attorneys' fees segregation.

TDM, settled before trial. As a result, the plaintiffs were required to segregate the fees owed by the remaining defendants from those owed by the settling defendants. *Sterling*, 822 S.W.2d at 10–11. Over AEW's and Hughes' objections, the trial court submitted a question on attorneys' fees when the plaintiffs had not segregated the fees. This was error.

Shartrue's, Inc. and the Westrups argue that they were not required to segregate attorneys' fees in this case, and rely on the exception to the above-quoted rule:

> A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their "prosecution or defense entails proof or denial of essentially the same facts."

*Sterling*, 822 S.W.2d at 11 (quoting *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex.App.—Dallas 1987, writ denied)).

Here, however, the claims did not arise out of the same transaction and were not so interrelated that their prosecution entailed proof of essentially the same facts. The plaintiffs' claims against Hayman and TDM, according to their petition, arose at least in part from their "fail[ure] to perform the construction and/or repairs of the drainage and/or other pipe in a good and workmanlike manner...." This allegation was not made against AEW and Hughes, and no proof that AEW and Hughes were responsible for the drainage pipe being broken emerged at trial. Thus, at least some of the plaintiffs' claims against Hayman and TDM did not arise out of the same transaction—the breaking of the drainage pipe—as their claims against AEW and Hughes, who were not shown by the evidence to have any fault in the incident.

In cross-point one, Shartrue's, Inc. and the Westrups contend that, should we hold that segregation was required, we "remand to the trial court for the limited purpose of considering attorneys' fees...." We agree that this is the proper course.

"The determination of reasonable attorney's fees is a question for the trier of fact." *Sterling*, 822 S.W.2d at 12. In *Sterling*, the trial court, over the defendant's objection, submitted an issue on attorneys' fees and the jury awarded reasonable fees. *Id.* at 10. The defendant objected to the submission on the ground that the plaintiff had not segregated the fees by amount spent prosecuting the suit against each individual defendant. *Id.* The court stated the rule that "an award of attorney's fees erroneously based upon evidence of unsegregated fees requires a remand." *Id.* at 11. "Therefore," the court concluded, "a remand of the attorney's fee issue to the trial court for further consideration is appropriate." *Id.* at 12.

The same is true here, under facts like those in *Sterling*. We sustain point of error seven and cross-point one.[6]

### Point of Error Eight and Cross-points Two and Three: Evidence of Insurance

In point of error eight, AEW and Hughes argue that the trial court erred in overruling their objections to testimony and "documentary evidence" that showed that they had liability insurance. Two such instances occurred.

In the first, William Westrup testified that Richard Lyon, an employee of Hughes, told him on the day after the second of the two May floods that "our insurance will take care of this." Hughes and AEW objected. The trial court sustained the objection and instructed the jury not to consider the answer. Hughes and AEW also moved for a mistrial, but the trial court denied the motion.

In the second instance, the plaintiffs' trial counsel projected one of Hughes' and AEW's

---

6. Our holding here, that segregation of attorneys' fees owed by the nonsettling defendants from those owed by the settling defendants is required so that the nonsettling defendants are not charged fees for which they are not responsible, does not conflict with our holding in point of error two, that there was but a single injury in this case. This is merely a case where more than one defendant (some settling and some nonsettling), by separate acts, contributed to a single injury. *See, e.g., Sterling*, 822 S.W.2d 1 (court held there was one injury, *id.* at 8, and also remanded case for segregation of attorneys' fees, *id.* at 12).

**238**

responses to interrogatories on a screen for the jury's viewing. The attorney read the answer to the jury while it was displayed on the screen. The answer referred to an AEW incident report that was attached to the answer. The incident report was then projected on the screen and read in its entirety by the plaintiffs' counsel. A one-line reference to insurance—"Date accident was reported to insurance company [is] May 18, 1989"—is included in the report. Hughes and AEW objected to the reference, but not until the report had been offered into evidence, displayed, and completely read. The trial court instructed the jury not to consider insurance. Hughes and AEW also moved for a mistrial, but the trial court denied the motion.

■ Even if the injection of insurance into a trial is error, the fact that the issue was injected into the proceeding does not automatically require reversal. *Dennis v. Hulse,* 362 S.W.2d 308, 309 (Tex.1962); *United Cab Co. v. Mason,* 775 S.W.2d 783, 786 (Tex.App.—Houston [1st Dist.] 1989, writ denied). The complaining party must show harm from any error before the judgment may be reversed. *Mason,* 775 S.W.2d at 786.

Hughes and AEW concede that the jury "might have overlooked Mr. Westrup's testimony," the first instance described above. They also acknowledge the difficulty of showing "that a mention of insurance probably did cause rendition of improper judgment...."

■ Hughes and AEW have not met that burden here. Both instances were comparatively minor infractions, and their seriousness does not approach the level found in those cases that have been reversed on this ground. *See Mason,* 775 S.W.2d at 786–87. Hughes and AEW have made no showing of harm that would equate this case with those. It cannot be said of the incidents of which Hughes and AEW complain that they were "reasonably calculated to cause and probably did cause rendition of an improper judgment in the case." *Id.* at 787 (quoting TEX. R.APP.P. 81(b)(1)).

In cross-point two, Shartrue's, Inc. and the Westrups complain that the trial court erred in excluding the first mention of insurance of which Hughes and AEW complain. They

contend that Mr. Lyon's statement to Mr. Westrup that "our insurance will take care of this" was relevant because Hughes and AEW "took the position that Shartrue's and the Westrups did not act reasonably after the flood to protect and inspect their inventory," and Mr. Lyon's statement explains why Mr. Westrup "ceased contact" with his own insurer—because he believed, based on Mr. Lyon's representation, that the Pavilion's insurance would take care of the matter.

The error, if any, was harmless, because testimony to the same effect was elicited from Mr. Westrup a short time later in the trial after Hughes' and AEW's objection:

Q. (by plaintiffs' counsel): Mr. Westrup, Richard Lyon, did Mr. Lyon say something to you at the time of the May 18th flood?

A. Yes. Richard—

Q. Could you tell the jury please generally what kind of statements and/or representations Mr. Lyon made to you?

A. Mr. Lyon told me that the mall would help me.

. . . .

Q. Before this had you made any contact with any insurance person on your behalf?

A. Yes, I had.

Q. Who had you contacted?

A. I contacted my insurance company, CNA.

. . . .

Q. As a result of the contact you had with Mr. Lyon on May 18 and the statements he made to you, did you take any action or not take any action?

A. I ceased talking to my insurance adjuster and was waiting on the mall's help.

The only substantive difference between Mr. Westrup's testimony that Mr. Lyon said that "our insurance will take care of this" and Mr. Westrup's later testimony that Mr. Lyon said that "the mall would help" him is the fact of insurance, i.e., *how* the mall would help him. Mr. Westrup's later testimony, that the mall would "help" him, is to the same effect as his former testimony, that the mall would help him through its insurance. The later testimony is just as effective as the

former in conveying that Mr. Westrup ceased contact with his own insurer over the matter because he thought the Pavilion would cover the damage itself. Hughes and AEW's "position that Shartrue's and the Westrups did not act reasonably after the flood to protect and inspect their inventory" is countered for the jury's sake just as effectively by Mr. Westrup's later testimony as by his earlier testimony; both convey that the reason that Mr. Westrup "ceased contact" with his own insurer is that, because of Mr. Lyon's representation, he looked to the *Pavilion* for financial help.

■ An error in excluding evidence is harmless if other admitted evidence demonstrates the same facts that the evidence that. was excluded would have demonstrated. *Bryant v. Transcontinental Gas Pipe Line Corp.*, 821 S.W.2d 187, 188 (Tex.App.—Houston [14th Dist.] 1991, writ denied). That is the case here.◦ That Mr. Westrup "ceased contact" with his own insurer because of Mr. Lyon's representation that the Pavilion would be of financial assistance was demonstrated by Mr. Westrup's later testimony.

Shartrue's, Inc. and the Westrups have not shown that the evidence's exclusion was "reasonably calculated to cause and probably did cause rendition of an improper judgment in the case." TEX.R.APP.P. 81(b)(1). The error, if error it was, is not reversible.

■ In cross-point three, Shartrue's, Inc. and the Westrups complain that the trial court erred in admitting evidence that they were insured and received insurance payments. They concede, however, that their own counsel "elicited some of this evidence." A party may not complain on appeal that evidence was improperly admitted when that party itself elicited the same evidence or evidence of a similar character. *See Evans v. Covington*, 795 S.W.2d 806, 809 (Tex. App.—Texarkana 1990, no writ).

■ In order to obtain a reversal based on error in the admission or exclusion of evidence, a party must show that the trial court's ruling was erroneous and that the error was calculated to cause and probably did cause the rendition of an improper verdict. *GT & MC, Inc. v. Texas City Refining, Inc.*, 822 S.W.2d 252, 257 (Tex.App.—Houston [1st Dist.] 1991, writ denied). None of the parties have met this requirement here.

We overrule point of error eight and cross-points two and three.

### Cross-point Four: Lost Inventory Damages

■ In cross-point four, Shartrue's, Inc. and the Westrups argue that the trial court erred in failing to grant their motion for new trial on the ground that the jury's failure to award Shartrue's, Inc. damages for lost inventory is against the great weight and preponderance of the evidence and is manifestly unjust.

The jury, however, heard evidence that Shartrue's, Inc. made a significant amount of money from the sale of some of the shoes that were in its inventory during the flooding by moving those shoes in sales held at the store after the last flood. Furthermore, there was evidence from which the jury was entitled to infer that, after the flooding, Shartrue's, Inc. did not take steps that may have saved those shoes that were lost entirely, or at least reduced their damage and rendered them saleable, if at a reduced price. Considering the evidence that it heard regarding Shartrue's, Inc.'s inventory, the jury's decision not to award Shartrue's, Inc. damages for lost inventory was not against the great weight and preponderance of the evidence or manifestly unjust.

We overrule cross-point four.

### Cross-point Five: Mental Anguish Damages

In cross-point five, Shartrue's, Inc. and the Westrups contend that the trial court erred in failing to grant their motion for new trial on the ground that the jury's failure to award the Westrups damages for mental anguish is against the great weight and preponderance of the evidence and is manifestly unjust. We held above that the Westrups are not entitled to any personal damages here, because the causes of action in this case belonged only to the corporation. Thus, the Westrups are not entitled to mental anguish damages.

We overrule cross-point five.

### Conclusion

We affirm the part of the judgment in favor of Shartrue's, Inc. However, because Shartrue's, Inc. was awarded $23,000 in damages, and we held above that AEW and Hughes are entitled to a credit for the $770,-000 paid to the plaintiffs by settling defendants Hayman and TDM, we render judgment that Shartrue's, Inc. take nothing from AEW and Hughes.

Regarding that part of the judgment that awards damages to the Westrups, we reverse and render judgment that the Westrups take nothing against Hughes and AEW. We remand this case to the trial court for the limited purpose of determining the amount of attorneys' fees owed by Hughes and AEW.