**CLARY CORPORATION, Appellant,**

v.

**Daniel F. SMITH and Michael A. Smith, Individually, and d/b/a Fairfield Distributors, Appellees.**

**No. 2–93–243–CV.**

Court of Appeals of Texas,
Fort Worth.

July 3, 1997.

Rehearing Overruled Aug. 28, 1997.

Cantey & Hanger, L.L.P., Sloan B. Blair, Kevin C. Norton, Fort Worth, for Appellant.

Shannon, Gracey, Ratliff & Miller, L.L.P., John J. Drake, Steven J. Graham, Fort Worth, for Appellees.

Before DAY, DAUPHINOT and RICHARDS, JJ.

## OPINION ON REMAND

RICHARDS, Justice.

### I. INTRODUCTION

In our original opinion in this case, we reversed the trial court's judgment and dismissed appellees' claims based on our holding that the trial court lacked subject matter jurisdiction over this case. *See Clary Corp. v. Smith*, 886 S.W.2d 570 (Tex.App.—Fort Worth 1994). The Texas Supreme Court reversed our decision regarding the trial court's jurisdiction and remanded the case to us for additional proceedings. *See Smith v. Clary Corp.*, 917 S.W.2d 796 (Tex.1996). In this opinion on remand, we consider appellant's remaining points of error and appellees' cross-point. We must decide the following issues:

- When a lawsuit is dismissed for want of jurisdiction and later refiled in the same court, is the new pleading an amendment that relates back to the date the original lawsuit was filed, or is it a new lawsuit for statute of limitations purposes? We hold that the new pleading is a new lawsuit.

- In these circumstances, does the saving provision in section 16.064 of the Texas Civil Practice and Remedies Code operate to toll the statute of limitations? We hold that section 16.064 does not apply.

- When a defendant has allegedly committed torts against a partnership, does an individual partner ever have standing to recover from the defendant in the partner's individual capacity? We hold that an individual partner has standing to sue if the defendant violated the individual's—as opposed to the partnership's—legal rights.

- Can a distributorship, which is generally an intangible, constitute a good or service under the DTPA? We hold that it can, if the distributorship includes services that are clearly the objective of the transaction.
- Can an individual who does not personally lease or purchase goods or services be a consumer under the DTPA? We hold that the individual can be a consumer if the individual is the beneficiary of the goods or services.

We must also consider several challenges to the legal and factual sufficiency of the evidence. We hold that the evidence is sufficient to support all of the jury's findings pertinent to this appeal except the jury's award of mental anguish damages for DTPA violations.

In light of our holdings, we reverse the trial court's judgment as to appellees Michael A. Smith, individually, and d/b/a Fairfield Distributors, and render judgment that they take nothing because their claims are barred by limitations. We reverse that part of the trial court's judgment awarding appellee Daniel F. Smith, individually, mental anguish damages on his DTPA claim and render judgment that he is not entitled to mental anguish damages. We affirm the remainder of the trial court's judgment as to Daniel F. Smith, individually, and remand the cause to the trial court for recalculation of interest and entry of judgment in accordance with this opinion.[1]

## II. BACKGROUND FACTS

Daniel and Michael worked with their father in a family-owned pallet business. A pallet is a platform made from slats of wood connected by 2 × 4s called "stringers." It is not uncommon for a stringer to become cracked from use. In the 1970s and early 1980s, the accepted method of pallet repair consisted of nailing part of a 2 × 4 under the damaged stringer, which strengthened the stringer but decreased the space between the top and bottom platforms of the pallet.

In the mid-to-late 1980s, the pallet business was in transition. The use of high rack storage systems, which enabled a company to store goods on pallets 30 to 40 feet above the ground, and pallet conveyor loading systems became more prevalent. As a result, the old method of pallet repair created a hazardous situation. Forklift operators would periodically strike the block of wood under the repaired stringer while attempting to remove a pallet from high rack storage, causing merchandise to fall to the ground. The potential liability associated with repaired pallets outweighed any savings associated with them.

In 1989, Clary entered the pallet repair business. Clary had developed a machine that compressed plates on each side of a damaged stringer, creating a "splint." The splint does not significantly decrease the space between the top and bottom platforms of the pallet. Thus, businesses can use pallets repaired with the Clary system without exposing themselves to the risks associated with pallets repaired the old way. In addition, pallets repaired with the Clary system can be resold for the same price as pallets with no prior stringer damage, thereby creating a greater profit potential for companies who sell used pallets.

Being new to the pallet repair business, Clary decided to develop markets for its pallet products by using distributors with established contacts in the industry. At that time, Clary did not have a pre-established sales force marketing its products. Clary believed it would cost less to set up distributorships with pallet businesses who already had market contacts than to hire direct sales people.

In early 1989, Daniel read an advertisement for a Clary stringer repair system in a pallet trade magazine. Daniel contacted Clary and eventually spoke with Dwane Brown by telephone about the stringer repair system. Brown was Clary's national sales manager of pallet products. During the telephone conversation, Brown offered

---

1. In parts of this opinion, we refer to Daniel F. Smith and Michael A. Smith individually as "Daniel" and "Michael," and we refer to Fairfield Distributors as "Fairfield." At other times, we refer to these three parties collectively as "appellees." We refer to appellant Clary Corporation as "Clary."

Daniel a Clary distributorship. Daniel and his wife LaDonna then met with Brown to discuss the distributorship. Through Brown, Clary offered Daniel a 22-state east coast distributorship requiring a $50,000 initial outlay. In return, the distributorship was to receive factory leads on a monthly basis, local trade show support, six copies of Clary's sales video, a one percent annual advertising discount, annual prospect lists, engineering testing, a sales support package, a sales training program, 1,056 boxes of Clary pallet plates, and five pallet platers.

After meeting with Brown, Daniel and LaDonna borrowed $50,000 to invest in a partnership (Fairfield) that would market Clary products. Daniel also contacted Michael to discuss forming the partnership. Michael invested $30,000 in the partnership.

By early March 1989, Fairfield was formed and had contracted with Clary to be its east coast distributor. In September 1989, a dispute developed between Clary and Fairfield regarding whether Fairfield had or could retain the exclusive right to market Clary's products within the 22-state territory. This dispute continued until Clary notified Fairfield that Fairfield would no longer be allowed to market Clary's products.

On August 20, 1990, Clary sued appellees for money that Clary contended was due and owing for products Fairfield had purchased from Clary. Appellees counterclaimed, alleging violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA), negligent misrepresentation, and tortious interference with business relationships. After a trial, the jury found that appellees owed Clary $14,155.57 for Clary products. The jury also found that appellees were entitled to recover from Clary on their counterclaims. Based on the jury's findings, the trial court rendered judgment for appellees in the total amount of $264,270.61 plus post-judgment interest. This appeal followed.

Clary raises fifteen points of error on appeal. In point of error one, Clary contends that appellees' claims at trial were all part-

nership assets and that Daniel and Michael have no individual claims against Clary. In point of error two, Clary contends that Fairfield's and Michael's claims are barred by the statute of limitations. In points of error three through thirteen, Clary challenges the legal and factual sufficiency of the evidence to support the jury's answers to various jury questions. In points of error fourteen and fifteen, Clary challenges the award of attorneys' fees to appellees.

In a single cross-point, appellees contend that the trial court erred in excluding legal assistant fees from the attorneys' fees award.

### III. STATUTE OF LIMITATIONS

■ We will first address Clary's second point of error: whether Fairfield's and Michael's claims are barred by limitations. Appellees' claims against Clary were required to have been brought within two years of their accrual. The claims accrued, at the latest, when appellees should with reasonable care or diligence have discovered their alleged injuries, or in the case of the DTPA, the alleged deceptive act or practice. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986 & Supp.1997); TEX. BUS. & COM.CODE ANN. § 17.565 (Vernon 1987); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990); *Texas Am. Corp. v. Woodbridge Joint Venture*, 809 S.W.2d 299, 302–03 (Tex.App.—Fort Worth 1991, writ denied).

Appellees pleaded the discovery rule and obtained a jury finding setting the date of discovery of their claims as April 27, 1990. They filed their first counterclaims on August 6, 1991, alleging unliquidated damages. In their first amended counterclaim, filed on April 24, 1992, each of the appellees alleged damages amounts in excess of the county court's $100,000 jurisdictional limits.[2] Specifically, Daniel, Michael, and Fairfield alleged $197,545.33, $194,545.33, and $314,390.50, respectively in past and future damages.

---

**2.** A county court exercising civil jurisdiction has jurisdiction over "civil cases in which the matter in controversy exceeds $500 but does not exceed $100,000, excluding interest, statutory or puni- tive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition[.]" TEX. GOV'T CODE ANN. § 25.0003(c)(1) (Vernon Supp.1997).

Clary filed a plea to the court's jurisdiction and, on July 8, 1992, the trial court entered an order dismissing Fairfield's and Michael's claims for want of jurisdiction. The trial court also ordered Daniel to amend his counterclaim to plead an amount in controversy within the court's jurisdictional limits to avoid dismissal. Appellees' counsel approved the dismissal order in its entirety, although Clary's counsel only approved it as to form.

After entry of the July 8, 1992 order, Daniel filed second and third amended counterclaims. Then, on September 4, 1992, a fourth amended counterclaim was filed in which Fairfield and Michael were again named as parties to the suit and in which they reasserted their claims against Clary.

Clary contends that the fourth amended counterclaim was barred by limitations as to Fairfield and Michael (but not as to Daniel). We agree. In addressing this point of error, we must decide whether the fourth amended counterclaim was an amended pleading that "related back" to the original counterclaim to defeat Clary's statute of limitations defense, or whether the fourth amended counterclaim was a new lawsuit that was time-barred. We conclude it was the latter.

**A. The fourth amended counterclaim was a new lawsuit as to Fairfield and Michael, and the relation-back doctrine does not apply.**

■ When a cause of action is dismissed and later refiled, limitations are calculated to run from the time the cause of action accrued until the date that the claim is refiled. *See Cunningham v. Fox,* 879 S.W.2d 210, 212 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Cronen v. City of Pasadena,* 835 S.W.2d 206, 210 (Tex.App.—Houston [1st Dist.] 1992, no writ), *overruled on other grounds, Lewis v. Blake,* 876 S.W.2d 314, 315 (Tex.1994); *Berry v. Humble Oil & Ref. Co.,* 205 S.W.2d 376, 386 (Tex.Civ.App.—Waco 1947, writ ref'd n.r.e.). This is because a dismissal is equivalent to a suit never having been filed; thus, the statute of limitations is not tolled for any new pleading filed. *See Cunningham,* 879 S.W.2d at 212.

■ In this case, appellees' claims against Clary accrued on April 27, 1990, and limitations ran from that date. When Fairfield and Michael were dismissed from the case on July 8, 1992, it was as if they had never filed suit. The dismissal was based on their failure or refusal to plead an amount in controversy within the trial court's jurisdiction. Nearly two months later, on September 4, 1992, Fairfield and Michael joined Daniel in the fourth amended counterclaim and for the first time pleaded amounts in controversy that were within the trial court's jurisdiction. However, the "amendment" did not relate back to the date of the original counterclaim; instead, it was a new lawsuit because it was made post-dismissal. Moreover, because September 4, 1992 was more than two years after April 27, 1990, the new lawsuit was barred by limitations. *See id.* at 211–12 (party who was dismissed from suit for lack of standing and made a post-dismissal amendment to his complaint alleging proper grounds for standing actually filed a new lawsuit that was barred by limitations).

Nonetheless, appellees contend that Fairfield's and Michael's claims are saved from limitations on two grounds: the relation-back doctrine and the saving provision in section 16.064 of the Texas Civil Practice and Remedies Code.

■ Under the relation-back doctrine, if an amended pleading asserts additional causes of action based upon the same transaction or occurrence that formed the basis of the claims made in the original pleading, then the amended pleading relates back to the original filing and is not subject to a limitations defense. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.068 (Vernon 1986); *Ex parte Goad,* 690 S.W.2d 894, 896 (Tex.1985); *Lochinvar Corp. v. Meyers,* 930 S.W.2d 182, 188 (Tex.App.—Dallas 1996, no writ); *Duran v. Furr's Supermarkets., Inc.,* 921 S.W.2d 778, 791–92 (Tex.App.—El Paso 1996, writ denied).

The relation-back doctrine does not apply to this case because the fourth amended counterclaim was not an *amended* pleading as to Fairfield and Michael; it was a completely *new* pleading. After they had been completely dismissed from the case, Fairfield

and Michael reasserted their claims against Clary and alleged new amounts in controversy. The relation-back doctrine does not save claims that have been dismissed and are later refiled. *Compare Cunningham*, 879 S.W.2d at 212 (petition "amended" post-dismissal was a new lawsuit, not an amendment) *with Abbott v. Foy*, 662 S.W.2d 629, 631 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (pleading amended before dismissal was an amendment to original pleading). *See also Hanmore Dev. Corp. v. JBK Enter.*, 776 S.W.2d 738, 740 (Tex.App.—Corpus Christi 1989, writ denied) (omission of party in amended pleading operates as voluntary dismissal of party from lawsuit; if dismissed party is brought back into lawsuit through amendment made after limitations has run, suit is barred as to that party); *Johnson v. Coca-Cola Co.*, 727 S.W.2d 756, 758 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (same).

Because Fairfield's and Michael's joinder in the fourth amended counterclaim was a "new" lawsuit as to them, the relation back doctrine did not toll the running of limitations concerning their claims.

### B. Section 16.064 does not apply to save Fairfield's and Michael's claims.

The saving provision in section 16.064 is also inapplicable to this case. Section 16.064 provides:

> (a) The period between the date of filing an action in a trial court and the date of a second filing of the same action *in a different court* suspends the running of the applicable statute of limitations for the period if:
>
> (1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and

**3.** *See* Act of April 27, 1931, 42nd Leg., R.S., ch. 81, § 1, 1931 Tex. Gen. Laws 124, 124 (repealed 1985) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 16.064 (Vernon 1986)):

> When an action shall be dismissed in any way, or a judgment therein shall be set aside or annulled in a direct proceeding, because of a want of jurisdiction of the Trial Court in which such action shall have been filed, and within

> (2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action commenced in a court of proper jurisdiction.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.064(a) (Vernon 1986) (emphasis added).

We must decide whether section 16.064(a) applies to Fairfield and Michael's situation because there is no Texas case law directly on point. Construction of a statute is a question of law. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989). The primary rule of construction is that a court must look to the legislature's intent and construe the statute to effectuate that intent. *See Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex.1994). Statutory construction begins with an analysis of the statute. *See Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983). If the statute is clear and unambiguous, we must seek the legislature's intent as found in the plain and ordinary meaning of the words and terms used. *See Moreno*, 787 S.W.2d at 352; *Connors v. Connors*, 796 S.W.2d 233, 237 (Tex. App.—Fort Worth 1990, writ denied); *see also* TEX. GOV'T CODE ANN. § 312.002(a) (Vernon 1988).

By its terms, section 16.064 does not apply to this case. After dismissal, Fairfield and Michael refiled their claims in the *same* court, not a *different* one. The plain language of both section 16.064 ("second filing . . . in a different court") and its predecessor ("commencement in the second court")[3] indicates that the legislature intended the saving statute to apply only to cases refiled in a different court after dismissal, not in the same court. The case law also supports this interpretation. *See, e.g., Vale v. Ryan*, 809 S.W.2d 324, 326–27 (Tex.App.—Austin 1991, no writ) (cause of action properly refiled in state court after dismissal by federal court). *Compare Allright, Inc. v. Guy*, 696 S.W.2d

> sixty (60) days after such dismissal or other disposition becomes final, such action shall be commenced in a Court of Proper Jurisdiction, the period between the date of first filing and that of commencement in the *second Court* shall not be counted as a part of the period of limitation. . . .
>
> *Id.* (emphasis added).

603, 605 (Tex.App.—Houston [14th Dist.] 1985, no writ) [*Allright 2* ] *with Allright, Inc. v. Guy,* 590 S.W.2d 734, 735 (Tex.Civ.App.—Houston [14th Dist.] 1979, wrif ref'd n.r.e.) [*Allright 1* ] (after *Allright 1* court determined that county court did not have jurisdiction over amount in controversy, plaintiff properly refiled in district court). We are not aware of any case in which section 16.064 has been applied to toll limitations where a litigant amended his pleadings and refiled his case in the *same* court following dismissal.

■ We believe our interpretation of section 16.064 is in keeping with the statute's remedial purpose. Although the saving statute is to be liberally construed, its reach is not limitless. Rather, the statute is to be given a liberal construction to effectuate "its manifest objective—relief from penalty of limitation bar to one who has *mistakenly* brought his action 'in the wrong court.' " *Burford v. Sun Oil Co.,* 186 S.W.2d 306, 310 (Tex.Civ.App.—Austin 1944, writ ref'd w.o.m.) (op. on reh'g) (emphasis added). There is no evidence of mistake here. Appellees have neither alleged nor presented evidence that they were unaware of the trial court's amount in controversy limits. After Clary filed its plea to the jurisdiction, Fairfield and Michael could have amended their counterclaim to reduce their damages demand, yet they chose not to. Instead, they approved without limitation an order dismissing Fairfield and Michael. Then, after a lapse of nearly two months and two amended counterclaims by Daniel, they refiled their counterclaim in the same court with a reduced demand that could have been reduced to avoid dismissal in the first place. Section 16.064 was not designed to remedy such tactical decisions. *See Hotvedt v. Schlumberger Ltd. (N.V.),* 942 F.2d 294, 297 (5th Cir.1991).

Indeed, if a party can amend its pleadings to come within a trial court's jurisdiction, reliance upon section 16.064 is unnecessary; the party can avoid dismissal altogether through proper repleading. Then, the party would not be in the wrong court and would not suffer the "penalty of limitation bar" that section 16.064 is designed to protect against. Because Fairfield and Michael did not refile their case in a different court after dismissal

and because there is no evidence that they initially mistakenly filed their counterclaim in the trial court, they cannot rely on section 16.064(a) to save their claims from limitations. We sustain Clary's second point of error and hold that all of Fairfield's and Michael's claims are barred by limitations.

In light of our holding with regard to this point of error, we need not consider Clary's fifth, ninth, twelfth, or thirteenth points of error because they only challenge findings for Fairfield. We address all of Clary's remaining points only as they pertain to Daniel.

## IV. DANIEL'S RIGHT TO PURSUE INDIVIDUAL CLAIMS

In its first point of error, Clary contends that all of appellees' claims at trial were partnership assets and that Daniel had no individual claims against Clary. The jury found for appellees on three theories: DTPA violations, negligent misrepresentations, and tortious interference with business relationships. However, the jury only awarded Daniel damages on his DTPA and negligent misrepresentation claims. Daniel did not request or receive any damages for tortious interference with business relationships. Thus, we will only consider whether Daniel, individually, could prosecute claims against Clary for negligent misrepresentation and DTPA violations.

### A. Daniel had standing to sue.

■ Although it does not use the term "standing" in this point of error, Clary's contention is that Daniel had no standing to sue in his individual capacity. To maintain a lawsuit, a person must have standing to litigate the matters at issue. *See Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). Standing consists of some personal interest peculiar to the person individually and not as a member of the general public. *Id.* Without the breach of a legal right belonging to the plaintiff, no cause of action can accrue to his benefit. *See Nobles v. Marcus,* 533 S.W.2d 923, 927 (Tex.1976); *Department of Hous. & Urban Dev. v. Nueces County Appraisal Dist.,* 875 S.W.2d 377, 379 (Tex.App.—Corpus Christi 1994, no writ); *Bell v. Moores,*

832 S.W.2d 749, 752 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

Without addressing the merits of Daniel's negligent misrepresentation and DTPA claims,[4] we hold that Daniel asserted that Clary breached his individual legal rights; thus, he had standing to sue Clary in his individual capacity.

The cases upon which Clary relies all stand for the proposition that an individual shareholder or partner cannot personally pursue claims that actually belong to a corporation or partnership. *See, e.g., Commonwealth of Mass. v. Davis,* 140 Tex. 398, 168 S.W.2d 216, 221 (1942) (shareholder could not sue for corporation's injury), *cert. denied,* 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943); *Kenneth H. Hughes Interests, Inc. v. Westrup,* 879 S.W.2d 229, 235 (Tex.App.—Houston [1st Dist.] 1994, writ denied) (shareholders could not recover personally for corporation's injury); *Seidman & Seidman v. Schwartz,* 665 S.W.2d 214, 218 (Tex.App.—San Antonio 1984, writ dism'd) (partnership, not individual partners, owned cause of action against one partner for breach of fiduciary duty); *Gaines v. Gaines,* 519 S.W.2d 694, 696 (Tex.Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) (partner did not own title to specific property belonging to partnership); *see also, e.g., Cates v. Int'l Tel. & Tel. Corp.,* 756 F.2d 1161, 1176–77 (5th Cir.1985) (individual partner could not sue insurance company for damages to partnership after insurance company allegedly breached agreement with partnership); *Martens v. Barrett,* 245 F.2d 844, 846–48 (5th Cir.1957) (corporate shareholders could not sue third party because suit belonged to corporation).

These cases are not controlling because whether Daniel had standing to pursue *Fairfield's* legal rights against Clary is irrelevant to the individual standing issue. Daniel could pursue individual claims against Clary if Clary breached *his* legal rights.

■ Daniel contends that Clary breached his legal right to receive accurate information about the nature of Clary's distributorships and that the breach occurred before Fairfield was even formed. Daniel also contends that, but for the pre-partnership misrepresentations to him, he would not have acted and would not have incurred the damages he has personally incurred. Daniel pleaded that the alleged misrepresentations were made to him, individually. Because Daniel's individual negligent misrepresentation and DTPA claims are based on misrepresentations Clary allegedly made and actions he allegedly took before the partnership existed, we hold that Daniel can prosecute these claims against Clary in his individual capacity. *See Wingate v. Hajdik,* 795 S.W.2d 717, 719–20 (Tex. 1990) (supreme court would have affirmed trial court's damages award for corporate shareholder on his personal causes of action for fraud in the inducement and breach of fiduciary duty if those damages had been segregated from damages for misappropriation of corporate assets); *Bankruptcy Estate of Rochester v. Campbell,* 910 S.W.2d 647, 652 (Tex.App.—Austin 1995, writ granted) (shareholder may have personal cause of action against wrongdoer to corporation if wrongdoer also violates duty directly owed to shareholder as individual); *Schoellkopf v. Pledger,* 739 S.W.2d 914, 918 (Tex.App.— Dallas 1987) (nature of wrong, whether directed against corporation only or individual personally, determines who may sue), *rev'd on other grounds,* 762 S.W.2d 145 (Tex.1988); *see also Kaspar v. Thorne,* 755 S.W.2d 151, 155 (Tex.App.—Dallas 1988, no writ) (corporate shareholder may sue individually for breach of fiduciary duty); *accord Davis,* 168 S.W.2d at 222.

Clary also cites Daniel's pleadings to show that his individual claims were actually Fairfield's claims. For instance, Clary contends that the only misrepresentations and damages Daniel claimed were to the distributorship, which belonged to Fairfield. This contention is actually an argument that Daniel's pleadings were insufficient to allow submission of his individual claims to the jury. With the exception of its complaints concerning Daniel's consumer status, Clary did not

---

4. We address the merits of Daniel's negligent misrepresentation and DTPA claims in section IV(D), below.

make this argument to the trial court.[5] Thus, he has not preserved it for our review. *See* TEX.R. APP. P. 52(a). We overrule Clary's first point of error.

In points of error three and ten, Clary contends that the trial court erred in submitting Daniel's DTPA and negligent misrepresentation theories to the jury because these theories were not available to Daniel under the circumstances of this case.

### B. Daniel pleaded negligent misrepresentation of an existing fact.

■ To establish his negligent misrepresentation claim, Daniel had to prove: (1) Clary made a representation in the course of its business or in a transaction in which it had a pecuniary interest; (2) Clary supplied false information to guide Daniel in his business; (3) Clary did not exercise reasonable care or competence in obtaining or communicating the information; and (4) Daniel suffered pecuniary loss by justifiably relying on the representation. *See Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991). The "false information" supplied must have been a misstatement of existing fact. *See Airborne Freight Corp. v. C.R. Lee Enter.*, 847 S.W.2d 289, 294 (Tex.App.—El Paso 1992, writ denied).

Daniel's negligent misrepresentation was centered around his assertion that Clary offered him a 22–state distributorship that was supposed to be exclusive but that, in fact, was not exclusive. In point of error ten, Clary contends, in part, that Daniel did not plead a negligent misrepresentation claim because he did not allege misrepresentation of an *existing fact;* rather he merely alleged that Clary promised future action—that he (or Fairfield) would receive an exclusive distributorship with Clary.

■ We hold that Daniel's negligent misrepresentation theory was based on an alleged misstatement of existing fact. The parties agree that Clary, through Brown, informed Daniel that a distributorship was available. Daniel contended that Clary misrepresentated the nature of the distributorship to him by representing that the distribu-

torship was exclusive when it actually was not. If made, the representation concerning the nature of the distributorship was a statement of existing fact, not a promise to do something in the future. Consequently, Daniel alleged negligent misrepresentation of an existing fact. We overrule this portion of Clary's tenth point of error.

### C. Daniel's DTPA claim sounds in tort, not contract.

■ Clary also contends that Daniel's DTPA claim is based on Clary's alleged nonperformance of its contract with Fairfield and therefore is only actionable as a breach of contract claim, not as a DTPA claim. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 12 (Tex.1996) (holding that nonperformance of contract is not actionable under DTPA). However, Daniel's DTPA claim is based on the same allegations as his negligent misrepresentation claim; thus, it is based on Clary's alleged misrepresentation of an existing fact, not on Clary's alleged nonperformance of a contract. As such, it sounds in tort, not contract.

"Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991) (quoting W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 92, at 655 (5th ed.1984)). If the defendant's conduct would give rise to liability independent of whether a contract existed between the parties, the plaintiff's claim sounds in tort. *See Southwestern Bell Tel. Co.*, 809 S.W.2d at 494.

The duty that Daniel alleged Clary breached was one imposed by law, not contract: to refrain from making misrepresentations about existing fact, i.e., about the nature of the distributorship. If Clary breached this duty, its breach would give rise to liability independent of whether a contract existed between Clary and Daniel. Consequently, Daniel can sue individually for any false, misleading, or deceptive act or practice enu-

---

**5.** We address Daniel's consumer status in section IV(D), below.

merated in the DTPA that is related to the alleged misrepresentations. *See Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985) (oral misrepresentations can serve as basis for DTPA claim); *Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d 826, 838 (Tex.App.—Amarillo 1993, writ denied) (op. on reh'g) (same).

### D. Daniel was a consumer under the DTPA.

Clary's main premise under point of error three is that Daniel was not a consumer within the meaning of the DTPA.

 The DTPA's definition of "consumer" includes an individual who "seeks or acquires by purchase or lease, any goods or services...." TEX. BUS. & COM.CODE ANN. § 17.45(4) (Vernon 1987). We are to liberally construe the DTPA and give it the most comprehensive application possible without doing damage to its terms. *See Kennedy v. Sale,* 689 S.W.2d 890, 892 (Tex.1985). To qualify as a consumer, Daniel had to prove both: (1) that he sought or acquired goods or services by purchase or lease; and (2) that the goods or services formed the basis of his complaint. *See Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981). Whether a claimant has proved consumer status is a question of law for the trial court. *See Johnson v. Walker,* 824 S.W.2d 184, 187 (Tex.App.—Fort Worth 1991, writ denied).

### 1. The distributorship consisted of "goods or services" that formed the basis of Daniel's complaint.

Clary first contends that Daniel is not a consumer because the goods or services purchased or acquired from Clary do not form the basis of his complaint. Daniel asserts that the distributorship consisted of both goods and services and was therefore covered by the DTPA. Clary counters that the distributorship was neither a "good" nor a "service" under the DTPA and that any services accompanying the distributorship were merely incidental to the transaction.

 The DTPA excludes those transactions that convey wholly intangible rights, such as money or accounts receivable, that are not associated with any collateral services. *See Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 174–75 (Tex.1980). Generally, a business is also an intangible, unless it encompasses goods or services purchased for use in the function of the business. In that event, if the plaintiff can show that the services purchased are clearly the objective of the transaction and not merely incidental to it, the transaction involves the transfer of "goods or services" for DTPA purposes. *See, e.g., Texas Cookie Co. v. Hendricks & Peralta, Inc.,* 747 S.W.2d 873, 876–77 (Tex.App.—Corpus Christi 1988, writ denied) (franchise agreement involved transfer of goods and services for DTPA purposes where collateral services included company training program, a confidential operating manual, and a "unique system" for marketing merchandise and tracking sales and inventory); *Wheeler v. Box,* 671 S.W.2d 75, 78 (Tex.App.—Dallas 1984, no writ) (business encompassed goods and services where it included operations manual, word processing programs, marketing materials, guidelines for necessary office supplies, equipment, office space, and up to ten days' on-site training and assistance).

In this case, the evidence shows that the distributorship encompassed both goods and services. The goods were Clary products. The services included factory leads within the distributorship's territory on a monthly basis, local trade show support, six copies of Clary's sales video, a one percent annual advertising discount, annual prospect lists, engineering testing, a sales support package, and a sales training program.

 Clary advertised its pallet repair products in industry trade magazines, and Daniel could have purchased those products without investing in a distributorship. Daniel's primary object in acquiring the distributorship was not to purchase Clary products but to obtain the services that accompanied the distributorship—especially Clary's provision of factory leads in the 22-state distributorship territory—with attendant marketing support and incentives. Thus, the services associated with the distributorship were the primary object of the transaction, and the distributorship involved the transfer of

"goods or services" for DTPA purposes. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815–16 (Tex.1997); *Texas Cookie Co.*, 747 S.W.2d at 877. Moreover, whether Clary provided the services—in particular, whether Clary provided all factory leads in the distributorship territory—formed the basis of Daniel's complaint.

Clary mistakenly contends that this case is controlled by *Fisher Controls Int'l v. Gibbons*, 911 S.W.2d 135, 139 (Tex.App.—Houston [1st Dist.] 1995, writ filed). In *Fisher*, the plaintiff merely contracted to be a "sales, engineering[,] and service representative" of Fisher products and receive sales commissions. *Id.* The right to sell a company's products is not a "good or service" under the DTPA. *Cf. Johnson*, 824 S.W.2d at 187 (insurance agent not a consumer where he merely contracted for right to sell insurance agency's products). A Clary distributorship was more than the right to sell Clary products; it included many services central to the transaction, which we have listed above.

### 2. Daniel sought or acquired the distributorship.

Clary also asserts that Daniel is not a consumer because he did not seek or acquire the distributorship from Clary, because Clary and Fairfield were the only parties to the distributorship arrangement. This argument assumes, incorrectly, that there must be privity between the individual asserting consumer status and the party who allegedly engaged in false, misleading, or deceptive conduct.

Privity of contract with a defendant is not required for a plaintiff to be a consumer. *See Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1996). Instead, we focus on the plaintiff's relationship to the transaction. *See Arthur Andersen & Co.*, 945 S.W.2d at 814–15. The evidence shows that, in reliance upon Clary's alleged representations concerning the exclusive nature of its distributorship, Daniel sought to obtain the distributorship by borrowing $50,000 and investing it to form a partnership (Fairfield) that would sell Clary products. Thus, Daniel "sought" goods or services in the form of the distributorship.

*See Lewis & Lambert Metal Contractors, Inc. v. Jackson*, 914 S.W.2d 584, 587 (Tex. App.—Dallas 1994) (plaintiff-employees "sought" goods or services when they complained to employer about ventilation system and employer contracted with defendant to check and repair system), *vacated upon settlement without regard to merits*, 938 S.W.2d 716 (Tex.1997).

The parties disagree about whether Daniel personally paid Clary $50,000 to purchase the distributorship, or whether Fairfield made that payment. However, the DTPA does not require the plaintiff himself to purchase or lease the goods or services to be a consumer, as long as the plaintiff's reliance on the defendant's misrepresentations concerning the goods or services caused the plaintiff's injuries. *See Arthur Andersen & Co.*, 945 S.W.2d at 814–15 (stock purchaser that required audit and relied on it in purchasing stock was consumer, even though it did not pay for audit, because stock purchaser sought to benefit from audit); *Kennedy*, 689 S.W.2d at 892 (employee complaining of misrepresentations concerning group insurance policy provisions was consumer, even though employer purchased policy, because he "acquired" policy benefits "by purchase" through employer); *Jackson*, 914 S.W.2d at 587–88 (employees complaining of misrepresentations made to employer concerning ventilation system were consumers even though they did not contract with company that repaired ventilation system). In this case, Daniel sought to benefit from Fairfield's purchase of the distributorship, just as the stock purchaser in *Arthur Andersen & Co.* sought to benefit from the audit and the hospital employees in *Jackson* sought to benefit from the hospital's contract to repair its ventilation system.

Clary's reliance on *Westrup*, 879 S.W.2d at 229 is misplaced. In that case, a corporation relied on a business developer's misrepresentations and entered into a lease agreement. As a result, the corporation suffered irreversible damages and went out of business. The corporation and its shareholders sued under the DTPA. The shareholders argued that they were consumers because they suffered the loss of their personal investments

in the corporation as a result of the defendant's alleged DTPA violations. The appellate court disagreed and held that the alleged wrong was done solely to the corporation because only the corporation had entered into the lease agreement. Thus, the court reasoned that the corporation—and not the shareholders—was the sole consumer. *Id.* at 234–35.

As we noted in our disposition of Clary's first point of error, the *Westrup* court's holding actually goes to the issue of standing. The court in *Westrup* determined that corporate shareholders were not consumers because their legal rights were not violated. Conversely, we have held that Daniel had standing to sue Clary because he alleged that Clary violated *his* individual legal rights before Fairfield ever existed. Accordingly, *Westrup* does not apply to this case.

We hold that Daniel sought to acquire goods and services and is therefore a consumer for DTPA purposes. Point of error three is overruled.

Clary's fourth point of error challenges the legal and factual sufficiency of the evidence to support the jury's finding that Clary violated the DTPA. However, Clary does not brief this point except to argue that Daniel is not a consumer. In light of our holding that Daniel is a consumer, we need not consider this point of error.

### V. LEGAL AND FACTUAL SUFFICIENCY CHALLENGES

In its sixth point of error, Clary contends the evidence is legally and factually insufficient to support the jury's answer to Question 7a.

### A. The standard of review.

In determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any

challenges go merely to the weight to be accorded the evidence. *See Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993).

A "no evidence" point of error may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *See Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *See Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992).

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination and, if reversing, to detail that evidence in the opinion. *See Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 29 (Tex.1993).

Clary does not brief its contention that the evidence is factually insufficient to support the jury's finding; thus, we will only consider Clary's no evidence argument. *See* TEX.R. APP. P. 74(f).

### B. There is some evidence to support the jury's economic damages finding.

In response to Question 3, the jury found that Clary's DTPA violations were a producing cause of damages to Daniel. Clary does not challenge this finding, except to assert that Daniel was not a consumer. In response to Question 7a, the jury found Dan-

iel's economic damages caused by Clary's DTPA violations were $15,000.

Clary contends that this finding should be disregarded because:

- Daniel is not a consumer and is not entitled to DTPA damages;
- the distributorship was owned by Fairfield, not Daniel; thus, Daniel has no individual claim for any loss of its value;
- there is no evidence to support the jury's finding.

Clary's first argument fails in light of our holding that Daniel is a consumer for DTPA purposes. Clary's second argument also fails in light of our holding that Daniel did not have to personally own the distributorship to recover DTPA damages. Moreover, Daniel did not recover for loss of the distributorship's value, but for damages he incurred as a result of Clary's alleged misrepresentations about the nature of the distributorship. As we discuss below, Daniel properly used the difference between the distributorship's actual and represented value as a measure of damages.

▬ We now turn to Clary's third argument, that there is no evidence to support the jury's damages finding because Daniel did not put on any evidence of the distributorship's value at any time. Establishing the amount of damages is the jury's duty in a jury trial. *See Hedley Feedlot,* 855 S.W.2d at 839. The fact finder may award damages anywhere within the range of evidence presented at trial. *See City of Houston v. Harris County Outdoor Adver. Assoc.,* 879 S.W.2d 322, 334–35 (Tex.App.—Houston [14th Dist.] 1994, writ denied), *cert. denied,* —— U.S. ——, 116 S.Ct. 85, 133 L.Ed.2d 42 (1995).

▬ In a DTPA case, a plaintiff may recover under either the "out of pocket" or the "benefit of the bargain" measure of damages, whichever gives the greater recovery. *See Leyendecker & Assoc. v. Wechter,* 683 S.W.2d 369, 373 (Tex.1984) (op. on reh'g); *Ebby Halliday Real Estate, Inc. v. Murnan,*

916 S.W.2d 585, 590 (Tex.App.—Fort Worth 1996, writ denied). In this case, Daniel sought to recover under the benefit of the bargain measure, which is the difference between value as represented and value actually received.[6] *See Leyendecker & Assoc.,* 683 S.W.2d at 373. Thus, we must consider whether there is any evidence that the distributorship "as it was" was worth less than the distributorship as represented.

▬ Daniel's position at trial was that Clary represented that the distributorship was exclusive within a 22–state territory; that Clary would forward all factory leads it received in the distributorship territory; and that Clary would not make any direct sales of its products within the distributorship territory. The record shows that Clary did make direct sales of its products within the distributorship territory. The record also shows that, in the last three quarters of 1989, Fairfield had a net profit loss of $39,401 because of Clary's direct sales within the distributorship territory. This is some evidence that the distributorship as represented by Clary (an exclusive distributorship) was worth more than the distributorship "as it was" (a nonexclusive distributorship). Thus, there is some evidence to support the jury's $15,000 damages finding for Daniel in response to Question 7a.

Clary contends that the net lost profits calculation is incomplete because it only includes shipping and does not take into account the ordinary costs of doing business, such as advertising and overhead costs. Daniel's expert witness explained, however, that Fairfield had already deducted these expenses from its actual gross profits. With the exception of additional shipping expenses, these costs would not have increased if Fairfield had been able to make the sales that Clary made directly. Accordingly, it was not necessary to factor these costs into the net profits calculation.

Because there is some evidence to support the jury's finding in response to Question 7a, we overrule Clary's sixth point of error.

---

6. In Question 7, the trial court instructed the jury to:

 Consider the following elements of damages, if any, and none other:

 The difference, if any, in the value of the distributorship as it was and the value it would have had if it had been as it was represented.

**468**

### C. Daniel is not entitled to mental anguish damages.

In its seventh point of error, Clary contends the evidence is legally and factually insufficient to support the jury's answer to Question 8. In response to Question 8, the jury awarded Daniel $10,000 for mental anguish damages caused by Clary's DTPA violations.

Mental anguish damages are not recoverable under the DTPA absent proof of a willful tort, gross negligence, unconscionable conduct, or a knowing DTPA violation. *See State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 435 (Tex.1995); *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 117 (Tex.1984); *Smith v. Levine,* 911 S.W.2d 427, 435 (Tex.App.—San Antonio 1995, writ denied). In this case, the jury found that Clary did not engage in any unconscionable conduct. Daniel did not allege a willful tort, and he did not seek or obtain a gross negligence finding with regard to his DTPA claim. While the jury found that Clary knowingly violated the DTPA, the jury concluded that only Fairfield was damaged by the knowing conduct. This record does not support the jury's award of mental anguish damages to Daniel. We sustain Clary's seventh point of error.

In light of our holding regarding this point, we need not consider Clary's eighth point of error.

### D. The evidence supports the jury's findings regarding negligent misrepresentation.

In points of error ten and eleven, Clary challenges the legal and factual sufficiency of the evidence to support the jury's findings that Clary made a negligent misrepresentation to Daniel, causing him $5,000 in damages.

Clary devotes its entire argument under point ten to the premise that Daniel did not have a negligent misrepresentation claim because he did not plead or prove that Clary made a misrepresentation concerning an existing fact. In our discussion in section IV(B), we held that Daniel's negligent misrepresentation theory was based on an alleged statement of existing fact: that Clary had an exclusive distributorship available, when it actually did not.

Daniel testified that Clary represented to him that its distributorship benefits package included "all factory leads" in the distributorship territory; that Clary "would not sell direct in our territory ... [p]eriod"; that he was not aware for nearly a year that Clary was making direct sales in Fairfield's territory; and that, upon confrontation, Clary credited to Fairfield's account a direct sale that Clary had made within the distributorship territory. Brown testified that Clary "wasn't going to sell direct" when it initially set up the distributorship arrangements. But the record shows that Clary made direct sales of its products within the distributorship's territory beginning at least in March 1989. In addition, Paul Hurder, a Clary general manager, testified that Clary's by-laws prohibited it from giving anyone an exclusive distributorship. Considered as a whole, the record supports Daniel's theory that Clary misrepresented to him the exclusive nature of the distributorship. Thus, the evidence is sufficient to support the jury's negligent misrepresentation finding.

The record also shows that Daniel borrowed $50,000, which was used to purchase enough Clary products to "start up" the distributorship. There is evidence that Daniel would have purchased at least some of Clary's products regardless of its representations concerning the distributorship. For instance, Daniel initiated contact with Clary after reading an advertisement for Clary products in a pallet trade magazine. Because Daniel's family was in the pallet repair business, he was "real interested" in Clary's stringer repair products, or "pallet platers." However, Clary's pallet platers cost approximately $7,000 each, and cartons of its pallet plates cost $26 or $31 each. Thus, the record shows that, if Daniel had not been offered a Clary distributorship, he might have made a much smaller out-of-pocket investment in Clary's products. This evidence is sufficient to support the jury's $5,000 damages award for negligent misrepresentation. We overrule point of error eleven and the remainder of point of error ten.

### E. The evidence supports the attorneys' fees award.

In points of error fourteen and fifteen, Clary contends that the evidence is legally and factually insufficient to support the amount of attorneys' fees that the jury awarded. Each consumer who prevails in a DTPA action is entitled to recover court costs and reasonable and necessary attorneys' fees. *See* TEX. BUS. & COM.CODE ANN. § 17.50(d) (Vernon Supp.1997). Daniel's attorney, John Drake, testified that:

- he and his legal assistant were the two primary individuals who worked on Daniel's case;
- his hourly rate was $125 and was reasonable and necessary;
- three associates from Drake's firm worked on research projects related to the case;
- before filing Daniel's counterclaim, Drake spent approximately 35 hours investigating the case and making a demand to Clary under the DTPA;
- the total fees in the case, excluding paralegal time, were $70,260.

Drake's testimony was uncontroverted. On cross-examination, Clary only asked Drake whether he had segregated the time he spent working on Daniel's case before and after the counterclaim was filed. Drake responded "[n]ot totally" because of pre-suit time spent investigating Daniel's claim.

■ Where, as here, trial counsel's testimony concerning attorneys' fees is clear, positive and direct, and uncontroverted, it is taken as true as a matter of law. This is especially true where the opposing party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990); *Van Waters & Rogers, Inc. v. Quality Freezers, Inc.*, 873 S.W.2d 460, 464 (Tex.App.—Beaumont 1994, writ denied). Because Clary neither questioned nor controverted Drake's testimony, even though it had the means and opportunity to do so, we may take the testimony as true. Points of error fourteen and fifteen are overruled.

### F. The trial court properly excluded legal assistant fees from the attorneys' fees award.

In his sole cross-point, Daniel contends that the trial court improperly excluded legal assistant fees from the attorneys' fees award. The jury found that a reasonable attorneys' fee for the trial of this case was $84,160. This award included legal assistant fees. After the jury returned its verdict, Clary moved for judgment notwithstanding the verdict, asserting in part that there is no evidence to support the attorneys' fees award. The trial court granted Clary's motion "solely to the extent there is no evidence to support the jury's award of paralegal fees" and reduced the attorneys' fees award by $13,900.

■ Compensation for a legal assistant's work may be separately assessed and included in the attorneys' fees award if a legal assistant performed work that has traditionally been done by an attorney. *See Moody v. EMC Servs.*, 828 S.W.2d 237, 248 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Gill Sav. Ass'n v. International Supply Co.*, 759 S.W.2d 697, 702 (Tex.App.— Dallas 1988, writ denied). However, the evidence must establish:

- that the legal assistant is qualified through education, training, or work experience to perform substantive legal work;
- that substantive legal work was performed under the direction and supervision of an attorney;
- the nature of the legal work that was performed;
- the hourly rate charged for the legal assistant; and
- the number of hours expended by the legal assistant.

*See Moody*, 828 S.W.2d at 248.

■ In this case, Drake testified that his legal assistant, Linda Taylor, spent a "considerable amount of time in going through documents and in the document production" under Drake's direction. Drake did not explain how Taylor was qualified to participate in document production, or even that she was

qualified at all. Although Drake testified about the total amount of legal assistant fees, he did not state what Taylor's hourly rate was or give the number of hours she worked on the case. Drake did not submit any billing statements detailing Taylor's work expended or the time involved. We hold the evidence is legally insufficient to support the jury award for legal assistant fees. Daniel's cross-point is overruled.

## VI. CONCLUSION

We reverse the trial court's judgment as to Fairfield and Michael and render judgment that they take nothing because their claims are barred by limitations. We reverse that part of the trial court's judgment awarding Daniel mental anguish damages on his DTPA claim and render judgment that he is not entitled to mental anguish damages. We affirm the remainder of the trial court's judgment as it pertains to Daniel and remand the cause to the trial court for recalculation of interest and entry of judgment in accordance with this opinion.