**PANATROL CORPORATION,**
Appellant/Cross–Appellee,

v.

**EMERSON ELECTRIC COMPANY,**
Appellee/Cross–Appellant.

**No. 04–03–00547–CV.**

Court of Appeals of Texas,
San Antonio.

March 23, 2005.

---

David E. Chamberlain, Amy C. Horowitz, Glenn A. Brown, Timothy B. Poteet, Chamberlain McHaney, Austin, Sharon E. Callaway, Crofts & Callaway, P.C., San Antonio, for appellant.

Daniel J. Gunter, James E. Breitenbucher, Patrick D. McVey, Riddell Williams, P.S., Seattle, WA, Kurt H. Kuhn, Brown McCarroll, L.L.P., Austin, Jerry D. Mason, Peter T. Martin, Tab H. Keener, Peter T. Martin & Associates, Dallas, Patrick M. Dooley, Dooley, Hoerster & Sione, L.L.P., Fredericksburg, for appellee.

Peter T. Martin, Jerry D. Mason, Tab H. Keener, Patrick M. Dooley, for Willowbrook Foods, Inc., et al.

Sitting: Alma L. López, Chief Justice, Sandee Bryan Marion, Justice, Phylis J. Speedlin, Justice, concurs in judgment only.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

In this appeal, we determine whether the trial court erred in rendering summary judgments on appellee's claim for contribution and appellant's claim for indemnity. We conclude the trial court erred; therefore, we reverse and remand.

## BACKGROUND

This dispute arises from a larger suit filed by plaintiffs against several defendants, including Emerson Electric Company ("Emerson"). The plaintiffs operate a turkey processing plant in Fredericksburg, Texas, and they purchased a commercial turkey fryer from Peerless Metal Products Corporation ("Peerless"). The fryer included as a component a fire suppression system to smother oil fires that may occur in the unit. Peerless ordered two control panels from Panatrol Corporation, specifying that each panel include one "Chromalox Temperature Controller" and one "Chromalox High Temperature Limit Switch." Panatrol ordered the temperature controllers from Emerson.

In 1999, a fire originated in the turkey fryer, destroying the building and its contents. In their lawsuit, plaintiffs alleged Emerson was liable for the malfunction of the temperature controllers. Plaintiffs did not sue Panatrol, but Emerson subsequently joined Panatrol as a third-party contribution defendant based on its alleged independent fault for plaintiffs' damages. Emerson alleged Panatrol designed, manufactured, and/or installed the control panel in the turkey fryer, which plaintiffs claimed was defective. Panatrol counterclaimed against Emerson for indemnification, asserting Emerson had a duty to indemnify it against any loss arising from the plaintiffs' product liability claims.

Emerson moved for summary judgment on all of plaintiffs' claims against it. Panatrol and Emerson each filed cross-motions for summary judgment on the other's claims. In successive orders, the trial court rendered summary judgment (1) in

favor of Emerson on all of plaintiffs' claims against Emerson; (2) in favor of Panatrol dismissing Emerson's contribution claim against Panatrol, and (3) in favor of Emerson dismissing Panatrol's indemnity claim against Emerson. The first summary judgment [1] was the subject of an appeal to this court in *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492 (Tex.App.-San Antonio 2004, pet. filed). In that appeal, a panel of this court concluded "that Emerson's summary judgment evidence did not conclusively establish that it was entitled to summary judgment on plaintiffs' strict liability claims or on the issue of causation, and plaintiffs' summary judgment evidence raised a fact issue sufficient to defeat Emerson's entitlement to a no-evidence summary judgment." *Id.* at 506. The second and third summary judgments are the subject of this appeal.

## PANATROL'S MOTION FOR SUMMARY JUDGMENT ON EMERSON'S CONTRIBUTION CLAIM

■ In Emerson's suit against Panatrol, Emerson alleged Panatrol designed and manufactured the turkey fryer's control panel. Therefore, Emerson contends it is entitled to contribution from Panatrol to the extent the plaintiffs attack the design or manufacture of the temperature controllers based on the design and manufacture of the fryer or its control panel.

In Panatrol's motion for summary judgment, Panatrol asserted Emerson was not entitled to contribution because there was no evidence that the Panatrol control panel was defective or that any defect was the producing cause of plaintiffs' damages. In response, Emerson argued that if the plaintiffs devised a liability theory against it, its experts "should be afforded an opportunity to present any evidence of a defect in the design and/or manufacture of the [Panatrol] control panel." On appeal, Emerson theorizes that the trial court dismissed its contribution claim against Panatrol because the court also dismissed plaintiffs' claims against Emerson. On appeal, Panatrol ignores this court's reversal of the summary judgment in favor of Emerson on the plaintiffs' claims and merely asserts "that Emerson, having obtained summary judgment against Plaintiffs on their claims for affirmative relief from Emerson, has no right of contribution from Panatrol."

In the underlying lawsuit, the plaintiffs alleged the turkey fryer and/or its component parts were defectively manufactured, marketed, sold, leased, installed, and serviced by one or more of the various defendants. In their response to Emerson's motion for summary judgment, the plaintiffs did not dispute that the controllers were components of the turkey fryer; however, plaintiffs asserted various fact issues based on their experts' affidavits. This court concluded Emerson was not entitled to summary judgment on plaintiffs' strict liability claims and on the issue of causation. *Willowbrook Foods,* 147 S.W.3d at 504–06. Our conclusion in *Willowbrook Foods* left open the issues of whether there exists a defect in the final product (the turkey fryer) and whether the component parts (the temperature controllers) were themselves defective. For this

---

1. In its motion for summary judgment on plaintiffs' claims, Emerson argued that as a producer of a component part, it cannot be held liable for the defective design, manufacture, or marketing of the turkey fryer as a whole. Emerson also asserted "the physical evidence conclusively establishes that [plaintiffs] cannot prove causation between the controllers and the fire." Emerson's argument was premised on its contention that plaintiffs' employees disconnected the temperature controllers; therefore, the controllers could not have caused the fire.

reason, Panatrol is not entitled to a no-evidence summary judgment on the issues of whether its control panel was defective and whether any defect was the producing cause of plaintiffs' damages. Because the issue of whether Panatrol may be found liable for a defectively designed or manufactured control panel remains to be tried, the trial court erred in rendering a take-nothing summary judgment against Emerson on its contribution claim against Panatrol.

### EMERSON'S MOTION FOR SUMMARY JUDGMENT ON PANATROL'S INDEMNITY CLAIM

In Panatrol's suit against Emerson, Panatrol asserted it is a "seller" and Emerson is a "manufacturer" as these terms are defined by the Texas Products Liability Act. TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(a) (Vernon 1997) (hereinafter, "the Products Liability Act" or "the Act"). Under the Act, a manufacturer must indemnify and hold harmless an innocent seller against loss arising out of a products liability action. *Id.* Therefore, according to Panatrol, it is entitled to indemnity for its legal fees from Emerson.

■ In Emerson's motion for summary judgment, Emerson argued Panatrol is not entitled to indemnity for its legal fees on three alternative grounds: (1) Panatrol waived any right to seek indemnification under Texas law by contractually agreeing to Missouri law, which provides no right of indemnification in this case; (2) Panatrol's indemnification claim is governed by Illinois law, which provides no right of indemnification in this case; or (3) if Texas law applies, Panatrol is not entitled to indemnification under the Act. When a movant asserts multiple grounds for summary judgment, and the order, as here, does not state the theory upon which the trial court based its decision, the non-movant on appeal must negate any grounds on which the trial court could have granted the order. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970); *Villanueva v. Gonzalez,* 123 S.W.3d 461, 464 (Tex.App.-San Antonio 2003, no pet.). Otherwise, we will affirm the summary judgment if any one of the theories advanced is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Villanueva,* 123 S.W.3d at 464.

### Conflict of Laws

As an initial matter, we first determine which jurisdiction's law applies. Emerson argues Panatrol may not rely on the Texas Products Liability Act because the parties agreed Missouri law applies. Alternatively, Emerson argues that Panatrol's indemnity claim is governed by Illinois law because Illinois has the most significant relationship to the contract.

Emerson contends Missouri law applies based on the following language contained in the invoice sent by Emerson to Panatrol for Panatrol's purchase of the temperature controllers:

The validity, performance, and all other matters relating to the interpretation and effect of this agreement shall be governed by the law of the state of Missouri. Buyer and Seller agree that the proper venue for allocations arising in connection herewith shall be only in Missouri and the parties agree to submit to such jurisdiction. No action, regardless of form, arising out of transactions relating to this contract, may be brought by either party more than two (2) years after the cause of action has accrued.

■ In determining the law applicable to indemnity clauses, Texas courts look to sections 187 and 188 of the Restatement (Second) of Conflict of Laws. *See Maxus Exploration v. Moran Bros.,* 817 S.W.2d 50, 53 (Tex.1991). We apply the law of the

jurisdiction chosen by the parties if the particular issue is one they could have resolved by an explicit provision in their agreement directed to that issue. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex.1990); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(1) (1971). Here, the parties chose the law of the state of Missouri to govern the "validity, performance, and all other matters relating to the interpretation and effect of" the agreement under which Panatrol purchased the temperature controllers from Emerson. However, the invoice does not contain a provision regarding indemnification. Therefore, the parties could not have resolved the issue of whether Emerson must indemnify Panatrol by reference to the invoice.

We will nevertheless apply the law of the state of Missouri to the issue of Emerson's obligation to indemnify Panatrol unless (1) there is a state with a more significant relationship to the transaction, and (2) applying the chosen law would contravene a fundamental policy of that state, and (3) that state has a materially greater interest in the determination of the particular issue. *See DeSantis*, 793 S.W.2d at 678; RESTATEMENT § 187(2)(b). We begin our analysis of the first and second exceptions with a consideration of the following contacts: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the contract's subject matter; and (5) the parties' domicile, residence, nationality, place of incorporation, and place of business. *3M v. Nishika Ltd.*, 953 S.W.2d 733, 735–36 (Tex. 1997); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971); *see also Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 170 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (noting that Restatement section 187 incorporates Restatement section 188).

The only contact linking Missouri to this case is that Emerson is a Missouri corporation. However, Panatrol is an Illinois corporation, and Panatrol ordered the temperature controllers from an Emerson division located in Illinois. The controllers were shipped directly to Panatrol's facility in Illinois. Therefore, the place of contracting; the place of negotiation; the location of the contract's subject matter; and the parties' domicile, residence, nationality, and place of incorporation weigh in favor of Illinois. However, there are two possible meanings to the phrase "the place of performance": (1) where the sales transaction was performed, and (2) where the indemnity obligation would be performed. *See Maxus*, 817 S.W.2d at 54 (noting that, on occasion, "it is more appropriate to consider the disputed contractual issue separately from the contract as a whole."). Here, the main performance contemplated by the invoice as a whole (the sale of the controllers) occurred in Illinois. But the plaintiffs' lawsuit, as well as the claims between Emerson and Panatrol, exist in Texas. Emerson chose to bring its contribution claim against Panatrol in Texas and any judgment will be entered in Texas. "Thus, we must decide whether the state with the most significant relationship should be determined by looking to the contract as a whole or the indemnity [issue] that [is] disputed." *Chesapeake*, 94 S.W.3d at 171. We must "consider which state's law has the most significant relationship *to the particular substantive issue to be resolved.*" *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex.2000)(emphasis in original); *see also Chesapeake*, 94 S.W.3d at 173 ("What is determinative is which state has the most significant relationship *with respect to the indemnity issue.*")(emphasis in original).

The "particular substantive issue to be resolved" here is whether Emerson must

indemnify Panatrol in the absence of any contractual obligation to do so. *Chesapeake,* 94 S.W.3d at 173 ("What is determinative is which state has the most significant relationship with respect to the indemnity issue."). Panatrol's claim against Emerson is for legal expenses Panatrol incurred in Texas, and not for any damages associated with the sale of the controllers by Emerson to Panatrol. We conclude, therefore, that the place of performance of Emerson's indemnity obligation, if any, is in Texas. *See id.* at 171–72 (claim for legal services and liability incurred in Texas, and not for drilling services performed in Louisiana).

We next evaluate these contacts according to their relative importance to the particular issue before us. *3M v. Nishika Ltd.,* 955 S.W.2d 853, 856 (Tex.1996)(evaluate state contacts not by their number, but by their quality). For this reason, we turn next to the following policy factors:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971).

It appears the only effective difference between the three jurisdictions is the absence of a statute in Illinois and Missouri governing the rights of a seller of a defective product to indemnity from the manu-

facturer of the product, and the existence of such a statute in Texas. However, both Illinois and Missouri allow for such indemnification under their common law. *See Dixon v. Chicago & North Western Transp. Co.,* 151 Ill.2d 108, 176 Ill.Dec. 6, 601 N.E.2d 704, 709 (1992) (where party seeking indemnity was not at fault, it may shift its entire liability to the truly responsible party, unless party seeking indemnity is found to have been at fault in causing the injury); *Welkener v. Kirkwood Drug Store Co.,* 734 S.W.2d 233, 242 (Mo.Ct.App. 1987) (seller lower in the chain of distribution who sells a product without actual or constructive knowledge of a defect and who has no duty to inspect is entitled to indemnity against one higher in the chain, such as the manufacturer).

Nevertheless, we believe the policy considerations in section 6 of the Restatement favor Texas resolving the indemnity issue. The Texas Products Liability Act "is a part of a scheme to protect manufacturers as well as sellers of products." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex.1999). The Act creates "a new, distinct statutory duty, because it 'is in addition to any duty to indemnify established by law, contract, or otherwise.'" *Id.* (quoting TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(e)(2) (Vernon 1997)). "[I]t established uniform rules of liability so that manufacturers could make informed business decisions and plaintiffs could understand their rights." *Id.* at 868–69. "The Legislature sought to protect both manufacturers and sellers, but gave preference to sellers with no independent liability." *Id.* at 869.

Applying the law of the forum in which the underlying product liability and contribution disputes will be resolved protects the parties' justified expectations; provides certainty, predictability and uniformity of result; and provides for ease in the

determination and application of the law to be applied.[2] Although the temperature controllers were purchased in Illinois, it is less desirable that Illinois law govern the indemnity claim and Texas law govern the product liability and contribution claims than it is that the same law govern all claims. *See Maxus*, 817 S.W.2d at 57. Because of Texas's strong policy favoring protection of innocent sellers, we believe Texas has the most significant relationship to the transaction and the parties.

It also appears that Texas has a stronger interest than Illinois or Missouri in determining whether Panatrol is entitled to indemnification. Panatrol's indemnity claim was triggered when Emerson filed its contribution claim against Panatrol. Emerson filed its claim against Panatrol in Texas, and not Illinois or Missouri. The controllers were components of a product sold in Texas and alleged to have caused serious damages in Texas. The underlying product liability lawsuit is on-going in a Texas court and the same Texas court will determine Emerson's contribution claim against Panatrol. Thus, the circumstances of this case lead us to conclude that Texas has a materially greater interest than Illinois or Missouri in deciding whether Emerson must indemnify Panatrol.

■ Finally, we determine whether application of Illinois or Missouri law would be contrary to fundamental policy of Texas. "[T]he focus is on whether the law in question is a part of state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction." *DeSantis*,

793 S.W.2d at 680. Before the adoption of the Products Liability Act, Texas common law placed an onerous burden on sellers to prove a product defective before having a right of indemnity against manufacturers. *Freightliner Corp. v. Ruan Leasing Co.*, 6 S.W.3d 726, 729 (Tex.App.-Austin 1999), *aff'd sub nom., Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86 (Tex. 2001). Sellers were required to bring an entirely separate action against manufacturers to prove the product was defective. *See Freightliner Corp.*, 6 S.W.3d at 729. The Act protects innocent sellers; and it places primary liability on manufacturers, who are usually in a better position to recognize and remedy defects. *See id.; see also Fitzgerald*, 996 S.W.2d at 868–69 (broadly interpreting manufacturer's duty to indemnify sellers, even sellers not in chain of distribution). We conclude the law governing indemnification of innocent sellers is fundamental policy in Texas, and to apply the law of another state under the circumstances of this case would be contrary to that policy.

For these reasons, we conclude that Emerson's obligation, if any, to indemnify Panatrol must be judged by Texas law.

### Indemnification under the Products Liability Act

■ "A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable." TEX. CIV. PRAC. & REM.CODE ANN. § 82.002(a). Under section 82.002, a manufacturer is required "to indemnify an in-

---

**2.** The needs of the interstate and international systems are not implicated in this case. The parties have not identified any such needs pertaining to the issue in this case, and we are not aware of any.

nocent seller for certain damages and litigation expenses arising out of a products liability action, but ... sellers [are required] to bear the damages and expenses for losses they cause." *Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 88 (Tex.2001). Emerson argues that the only claim asserted against Panatrol is that Panatrol is independently liable to plaintiffs based on its role as designer and manufacturer of the fryer's control panel. Emerson insists it did not sue Panatrol for any defect in the Emerson temperature controller; and it did not contend Panatrol, as the designer and/or manufacturer of the fryer's control panel, would be liable for any defect in the Emerson temperature controllers. Therefore, according to Emerson, because Panatrol faces no liability as a seller of Emerson's temperature controllers, Panatrol is not entitled to indemnification under the Act.

The *Meritor* Court construed the language in section 82.002(a) as suggesting "that we are to include all direct allegations against the seller that relate to plaintiff's injury as part of the 'products liability action' and that we exclude only those losses 'caused by' the seller." *Id.* at 90. The Court stated, "In using the phrase 'caused by,' rather than 'allegedly caused by,' the Legislature indicated that a mere allegation that the seller was negligent would not suffice to invoke the exception[, and] the manufacturer's 'duty to indemnify' ... applies regardless of outcome...." *Id.* at 91. The Supreme Court concluded that the exception to a manufacturer's duty to indemnify applies only upon a finding that the seller was independently liable. *Id.* The Court held that "while the manufacturer's duty to indemnify the seller is invoked by the plaintiff's pleadings and joinder of the seller as defendant, the exception to that duty is established by a finding that the seller's independent con-

duct was a cause of the plaintiff's injury." *Id.*

Here, it is true the plaintiffs did not allege liability on Panatrol's part. However, Emerson has done so. Emerson sued Panatrol for contribution to the extent the plaintiffs attack the design or manufacture of the temperature controllers based on the design and manufacturer of the fryer or its control panel. Under the Act, anyone who qualifies as a "seller" may seek indemnification, subject to certain limitations listed in section 82.002(a). *Fitzgerald,* 996 S.W.2d at 867. A seller is anyone who "is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." TEX. CIV. PRAC. & REM.CODE ANN. § 82.001(3). The *Fitzgerald* Court held that the Act did "not explicitly require that the seller be proven to have been in the chain of distribution." *Fitzgerald,* 996 S.W.2d at 867 (seller sold product but not the actual product used by plaintiff). Under this definition, Panatrol qualifies as a seller.

If the plaintiffs are successful in establishing that Emerson's temperature controllers were defective and the defect was the proximate cause of plaintiffs' damages, Panatrol will have expended costs in defending itself in a lawsuit filed against it by the manufacturer of the defective product. Panatrol's court costs, other reasonable expenses, and reasonable attorney's fees are losses included within the scope of section 82.002. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(b). On the other hand, as we have already noted, the issue of whether Panatrol may be found liable for a defectively designed or manufactured control panel remains to be tried. Therefore, if Emerson is successful in establishing that Panatrol's control panel was defective and the defect was the proximate

cause of plaintiffs' damages, then Panatrol is not an "innocent seller" within the scope of section 82.002 and the exception to Emerson's duty to indemnify applies. Because a fact issue remains on Emerson's duty to indemnify, we conclude that Emerson did not establish its entitlement as a matter of law to summary judgment on Panatrol's indemnity claim.

## CONCLUSION

We reverse the trial court's summary judgment in favor of Emerson and we reverse the trial court's summary judgment in favor of Panatrol. We remand the cause to the trial court for further proceedings.