In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00077-CV


______________________________




CUDD PRESSURE CONTROL, INC., Appellant



V.



SONAT EXPLORATION COMPANY, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 99-0199-1




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 This is a uniquely situated appeal. In this lawsuit, a drilling company (Sonat Exploration
Company) sued an oil field contractor (Cudd Pressure Control, Inc.) to obtain indemnity for money
paid as a settlement by Sonat to the survivors of employees killed in an oil field accident in
Louisiana. (1) At trial, a jury decided that the millions of dollars paid by Sonat was not an unreasonable
amount; that particular matter is not on appeal. Judgment was entered against Cudd in the amount
of $20,719,166.74. Cudd appeals, contending that the trial court incorrectly applied the governing
Texas statute on oil field indemnity agreements and that the evidence was inadequate to show that
mutuality of agreement existed--or to prove, as required by statute, the amount of insurance
coverage for indemnity that Sonat itself had acquired. 

 A critical issue below was the question of whether Texas or Louisiana law should apply to
the action. The trial court decided that Texas law should apply. In a Rule 11 agreement, Cudd
agreed not to raise that matter on appeal, in return for which Sonat agreed to nonsuit its pending
breach-of-contract claim against Cudd. Cudd did not raise the issue in its brief, and Sonat nonsuited
the claim.

 That is the action that caused a notable reaction, and ultimately prompted the Texas Supreme
Court into adding a unique third ingredient to this mixture. Lumbermens Mutual Casualty Company,
the company that is Cudd's excess insurer, and not a party at the trial level, attempted to intervene
in this case when it first arrived in this Court on appeal in mid-2003, based on the concept of "virtual
representation." We refused to allow the intervention, and Lumbermens immediately sought
mandamus relief from the Texas Supreme Court. The Texas Supreme Court held that both
Lumbermens' and Cudd's ultimate aim--to reverse the underlying judgment--was the same and that
the identity of interest on which the doctrine turned was to protect the funds that the underlying
judgment put at risk. The court concluded that Lumbermens was entitled to appeal the trial court's
choice-of-law ruling under the doctrine of virtual representation. In re Lumbermens Mut. Cas. Co.,
184 S.W.3d 718, 724 (Tex. 2006).

 Accordingly, we now have all of those issues before us.

Choice of Law

 We first address the choice-of-law issue raised by Lumbermens. The question is whether the
law of Louisiana (where the well was located and where the accident occurred) should apply, or
whether the law of Texas (where the survivors filed suit) would apply to the indemnity contract
between the parties. There is no clear choice of law provision in the Master Service Agreement or
in the attachments governing the entire contract. 

 There are substantive differences between the application of contractual oil field accident
indemnity clauses in Louisiana and in Texas. Both states have policies that restrict indemnity
agreements in the oil drilling business. Under Louisiana law, indemnity to a company from a third
party is only available through insurance, so long as the company pays for the premium and is named
an additional insured. The action is not a third-party action, but one brought directly against the
insurer. In an oil and gas drilling case under Texas statutory law, indemnity provisions between
companies are void unless specific requirements are met by the parties to make the obligation mutual
through the purchase of insurance. See Tex. Civ. Prac. & Rem. Code Ann. §§ 127.003, 127.005
(Vernon 2005). (2)

 A trial court's determination of choice of law is a question of law and is reviewed de novo. 
Pittsburgh Corning Corp. v. Walters, 1 S.W.3d 759, 769 (Tex. App.--Corpus Christi 1999, pet.
denied). The underlying principle is to protect the parties' expectations. In that regard, the courts
have repeatedly recognized that contracting parties frequently express their own choice of law for
the construction and interpretation of their agreement. The Texas Supreme Court has stated that
judicial respect for such a choice advances the policy of protecting the parties' expectations. 
DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 677 (Tex. 1990). (3)

 In this case, the contract is a "Master Service Agreement" clearly designed to be used in
several different jurisdictions. It contains sections that show a specific intent to use Texas law (and
the Texas indemnity statute) in relation to wells drilled in Texas, and to use New Mexico law and
its parallel statute in relation to wells drilled in New Mexico. It also contains a provision with
specific language concerning wells drilled in Louisiana designed to fit within the strictures of
Louisiana law as to insurance and indemnity arrangements. What the document does not contain is
specific language choosing a particular forum's law in all situations. 

 The controlling case is Maxus Exploration v. Moran Bros., 817 S.W.2d 50 (Tex. 1991), in
which the Texas Supreme Court reviewed the choice of law for an indemnity provision in a tort
claim in a drilling accident. 

 In Maxus, one party claimed the indemnity provisions within the general contract were
governed by Texas law, while the other sought to apply Kansas law. (4) As in this case, the contract
involved services connected with the drilling or operation of an oil well. Thus, the specific portion
of the Restatement addressing service contracts was implicated, and the Maxus court recognized that
it accords the place of performance paramount importance. Restatement (Second) of Conflict
of Laws § 196 (1971). All services were actually rendered and expected to be rendered in the other
state--being performable "almost entirely" in Kansas. The court stated that, "As a rule, that factor
alone is conclusive in determining what state's law is to apply." Maxus, 817 S.W.2d at 54. 

 The Maxus court recognized that, occasionally, an approach directed at a single issue, such
as indemnity, might be appropriate, rather than looking at the contract as a whole. However, the
court did not find it appropriate to apply that concept, even though the only issue before the court
was the indemnity provision of the contract. The court noted that, even if it was determined that
indemnity should be considered separately, the indemnity was also performable, at least for the most
part, in Kansas. 

A. The First Step--No Choice of Law Selected by the Parties.

 The court first recognized that the contract involved services associated with operating an
oil well--and that all of those services were contemplated and were actually rendered in the other
state--recognizing that this is a factor the courts have often held to be conclusive standing alone. 
Desantis, 793 S.W.2d at 679. That reasoning is based on Section 196 of the Restatement: 

 The validity of a contract for the rendition of services and the rights created thereby
are determined, in the absence of an effective choice of law by the parties, by the
local law of the state where the contract requires that the services, or a major portion
of the services, be rendered, unless, with respect to the particular issue, some other
state has a more significant relationship under the principles stated in § 6 to the
transaction and the parties, . . . .


Restatement (Second) of Conflict of Laws § 196 (emphasis added).

 As in Maxus, the parties in this case made no explicit choice of law as to the entire contract. 
Cudd agreed to provide its labor and expertise in providing well drilling services for Sonat when
requested. Although the contract contemplates the services could be provided in a number of states,
no actual work was to be performed until requested by Cudd at a particular location. The drilling
services to be provided in regard to the well in question were in Louisiana. Thus, under Maxus and
the Restatement formulation, because all of the services to be provided as a result of this particular
job controlled by the contract were rendered in Louisiana, Louisiana law should apply unless some
other state has a more significant relationship to the issue, transaction, and the parties.

 The Restatement provides that, in order to determine whether Texas has that "more
significant relationship," we look at the factors set out in Section 6. Restatement (Second) of
Conflict of Laws § 196.

B. The Second Step--Does Texas Have a More Significant Relationship?

 The court analyzed the contractual rights of the parties based on the principles set out in
Section 6 of the Restatement. (5) Restatement (Second) of Conflicts of Law § 6 (1971). Those
factors are:

 (a) the needs of the interstate and international systems,

 (b) the relevant policies of the forum,

 (c) the relevant policies of other interested states and the relative interests of those states in
the determination of the particular issue,

 (d) the protection of justified expectations,

 (e) the basic policies underlying the particular field of law,

 (f) certainty, predictability and uniformity of result, and

 (g) ease in the determination and application of the law to be applied. 

 1. Application of Restatement Section 188--Contacts. 

 When there is no effective choice of law by the parties, the contacts to be taken into account
in applying the above principles to determine the law applicable to an issue include:

 (a) the place of contracting--Sonat argues that the contract was prepared in Texas by
Sonat personnel and sent to Cudd in Oklahoma. Cudd argues that its representative signed the
agreement in Louisiana. Standing alone, the place of contracting is a relatively insignificant contact. 
Restatement (Second) of Conflict of Laws § 188 cmt. e (1971).

 (b) the place of negotiation of the contract--Cudd argues there was no negotiation
of the contract, but it was a standard contract Sonat imposed on its contractors. Cudd alleges Sonat
personnel were in Texas and Cudd in Oklahoma and Louisiana during any negotiation. Again, this
is of less importance when there is no single place of negotiation and agreement. Id. 

 (c) the place of performance--This appears to be the most important of all contacts. 
We will discuss this in detail later in the opinion. 

 (d) the location of the subject matter of the contract--The contract itself is written
so that it could apply in more than one state. However, as it is relevant to this occurrence, the
implementation of the work pursuant to the contract occurred when Sonat requested Cudd to work
on a particular well site in Louisiana. 

 (e) the domicile, residence, nationality, place of incorporation, and place of business
of the parties--Sonat and Cudd are both Delaware corporations. Sonat has its principal place of
business in Texas and Cudd alleges its principal place of business is in Louisiana, although there is
some conflicting evidence. See Restatement (Second) of Conflict of Laws § 188(2). 

 The most important of these contacts is the place of performance. In the case of a contract
for the rendition of services, the place of performance is given paramount importance. Maxus, 817
S.W.2d at 53. In Maxus, the court found that four of the seven principles militated clearly in favor
of applying Kansas law: the protection of justified expectations; certainty, predictability, and
uniformity of result; ease in the determination and application of the law to be applied; and the basic
policies underlying the particular field of law. Id. at 57. 

 2. Analysis of the Restatement Section 6--Factors.

 (a) The needs of the interstate and international systems

 The court found that the needs of the interstate and international systems were not implicated
much--if at all--in Maxus, and the same situation exists here. Lumbermens suggests that the
concept of comity would apply. Under the doctrine of comity, Texas will recognize the laws of other
states with the expectation that those states will extend Texas the same consideration. K.D.F. v. Rex,
878 S.W.2d 589, 593-94 (Tex. 1994); Greenwell v. Davis, 180 S.W.3d 287, 292 (Tex.
App.--Texarkana 2005, pet. denied). Lumbermens suggests that a choice of law was effectively
made in this case by a Louisiana court and that we should thus defer to that determination. Our
review of the materials cited does not show that such a situation clearly exists in connection with this
litigation--although it does in a parallel litigation with another party. Although quite weak, any
strength to that factor leans in favor of respecting Louisiana decisions and choosing that state's law.

 (b) & (c) Relevant polices of the forum--other interested states' policies, and relative
interests of states in the determination of the particular issue

 Review of the policies of Texas, and of the other interested states, and their relative interests
in determining the particular issue, as well as the policies underlying the particular field of law, were
matters of considerable concern in the Maxus decision. Those principles and the policies of Texas
and Kansas, and the relative interests of each in determining the validity of indemnity agreements,
were discussed in some detail. The court recognized that Kansas had no clear policy that it could
ascertain, while Texas had a clearly formulated policy by statute about such indemnity agreements.

 In Maxus, it appears that the lack of a clearly articulated policy in Kansas would make a
stronger case for applying Texas law. The court did not find it so. In a critical piece of descriptive
wording, the court noted that, although one could argue that the purpose of the statute was to protect
Texas contractors working on wells 

 wherever they might be situated, . . . we think it more plausible that it had the more
limited objective of protecting contractors who drill wells in Texas. We do not read

 the statute to have an extraterritorial reach, absent some agreement between the
parties. See Tex. Civ. Prac. & Rem. Code § 127.002(a).


Maxus, 817 S.W.2d at 57. 

 Thus, we must also conclude in this situation that, where Louisiana does have a case-derived
policy similar to that in the Texas statute, the argument for using the other state's law is even stronger
than in Maxus--while the reason for not extending the Texas statute across state lines similarly
applies in this case. 

 Does either Texas or Louisiana have a dominant interest in application of its law? Both
Texas and Louisiana have enacted laws voiding agreements, in oil and gas drilling operations, to
indemnify a party for losses arising from death or injury caused by the indemnitee. Tex. Civ. Prac.
& Rem. Code Ann. § 127.003; La. R.S. 9:2780 (2006). Texas has a statutory exception allowing
indemnity when all conditions have been fulfilled. By caselaw interpretation, Louisiana allows
indemnity by use of insurance. So the polices of both states are congruent. Therefore, it cannot be
said that either state has a dominant interest in determining the indemnity issue. 

 (d) Protection of justified expectations

 This factor recognizes that it is unfair to hold one liable under the law of one state when that
person had justifiably conformed its conduct to the requirements of another state. When specific
provisions are placed in a contract--one operative when a well is drilled in Texas and another when
drilled in Louisiana, the parties could justifiably expect their conduct should conform to the state
where the drilling operations occurred. 

 (e) Basic policies underlying the particular field of law

 Both state policies are similar--they restrict oil well indemnity agreements. Which state's
policy best restricts abusive indemnity contracts? There is no clear answer. 

 (f) Predictability and Uniformity

 It is predictable that the state law where the underlying work was performed should govern,
particularly when the parties so contemplated by the provisions of the contract. Where a lawsuit may
be filed for the damages is very unpredictable. 

 (g) Ease in determination of the law

 Each state law is clear and not difficult to apply. This factor is of no particular weight in
deciding the proper law to be applied. 

 Sonat argues that this case differs because Texas law was applied to the tort lawsuits. 
However, all of those suits settled, and choice of law was therefore irrelevant to the ultimate
outcome of the dispute. This differs from Maxus, where Kansas law was used in the underlying
lawsuit. Thus, the court's statement that it was more desirable that the same law govern both the
underlying lawsuit and the connected indemnity action is not directly applicable here. See Maxus,
817 S.W.2d at 57. Even if it were, it remains only one factor of several, and by no means mandates
a particular result.

C. The Impact of Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc. and Panatrol
Corp. v. Emerson Elec. Co.


 Sonat relies on Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc., 94 S.W.3d 163
(Tex. App.--Houston [14th Dist.] 2002, no pet.), as providing a different result. In Chesapeake, a
deeply divided court stated that, after review under the Restatement concepts of choice of law--and
reviewing the indemnity clause separately from the body of the contract, Texas law should apply. 

 In Chesapeake, the court noted that, although the drilling was in Louisiana, the suing was in
Texas. Id. at 171. In this appeal, Sonat suggests that, since we have the same sequence of events,
that should control the outcome. We disagree. A critical point in Chesapeake was the fact that there
was a choice of law: the parties agreed that Texas law would apply to the contract. This invokes
Section 187(2)(b) of the Restatement of Conflict of Laws. In that section, the application of the law
of the chosen state (Texas) applies unless it is contrary to a fundamental policy of a state with a
materially greater interest and which would be the state of applicable law in the absence of the choice
of law. 

 The Houston court recognized that Maxus held that the place of performance was of
"paramount importance" in service contract cases. The Houston court then differentiated its decision
by stating that the Texas Supreme Court had noted that there were two different meanings of "the
place of performance," that being 1) where the drilling services were performed, and 2) where the
indemnity obligation was performed by defending against the personal injury suit. Generally, it is
held that the place of performance is almost conclusive in establishing the state with the most
significant relationship to the issue, transaction, and parties. This contract was written in a manner
that was intended and contemplated that it would control regardless of the location of the drilling
operation. However, the parties did specify certain controlling indemnity law and statutes in the
event a well was drilled in either Louisiana or Texas. The parties agreed in a paragraph entitled
"Operations in the State of New Mexico or in the State of Texas or offshore of the State of Texas"
specifically that such operations in Texas or offshore of the State of Texas, if maritime law was
inapplicable, the provisions of Chapter 127 of the Texas Civil Practice and Remedies Code would
apply. See Tex. Civ. Prac. & Rem. Code Ann. § 127.001-.008 (Vernon 2005). The very statute
regulating indemnity that is before this Court was specifically referred to by these parties in the
contract. If this oil well had been drilled in Texas, this reference would indicate that Texas
indemnity law should apply. 

 However, the parties provided for a similar scenario in the event a well was drilled in
Louisiana. Since Louisiana law is different than Texas law on the issue of oil field indemnity, a
different provision was necessary. In Louisiana, the courts have recognized that the only effective
way to obtain indemnity in oil well drilling operations is through indemnitee's purchasing and paying
for such insurance and becoming an additional insured under the contractor's insurance. Marcel v.
Placid Oil Co., 11 F.3d 563 (5th Cir. 1994). (6) In an apparent effort to comply with that decision
concerning Louisiana law, the parties included a provision entitled "Louisiana and Offshore
Louisiana Operations." Contained in that provision is an authorization for Cudd, in return for
payment of the applicable premium by Sonat, to name Sonat as an additional insured. This
procedure is predicated on work performed "in the State of Louisiana." When the parties
incorporated indemnity provisions into their contract, the performance contemplated to engage these
indemnity provisions was the drilling of an oil well in the particular state. The parties recognized
that, in the event of a catastrophic accident at that well site, potential indemnity claims would be
bound by these indemnity provisions. These provisions relate directly to indemnity, and without
them, the indemnity provisions would be void according to Texas or Louisiana law. In essence,
these provisions establish that indemnity rights in Texas and Louisiana were tethered to the state
where the well was drilled. To say that the place of performance, even concerning the indemnity
issue, was established by the location of the lawsuit filed years after the acts took place that activated
the contractual indemnity right, is to ignore the plain language the parties used in their contract. 
Further, when the parties' contract specifically includes provisions designed to incorporate the unique
requirements of a particular state regarding indemnity for events occurring in that state, we believe
that state has a more significant relationship with the parties, the transaction, and issue for those
events than the place where one of the parties later chose to file a lawsuit. This analysis protects the
parties' justified expectations and lends itself to certainty, predictability, and uniformity. Since the
policy of Texas and Louisiana concerning oil well indemnities is consistent, each state's policy is
promoted, not violated, by this conclusion. 

 Sonat urges us to consider the indemnity issue separate and apart from the entire contract in
determining the application of the appropriate law. If we analyze that issue alone, we are confronted
with the argument that the parties agreed to use the law of the State of Louisiana concerning the
indemnity issue for operations conducted in Louisiana. Section 187 of the Restatement of Conflict
recognizes that, even when the contract does not have an express choice of law, it may be possible
to conclude from its provisions that the parties intended to have a particular issue governed by a
chosen state's law. "[T]he fact that the contract contains legal expressions, or makes reference to
legal doctrines, that are peculiar to the local law of a particular state may provide persuasive
evidence that the parties wished to have this law applied." Restatement (Second) of Conflict
of Laws § 187 cmt. a. By their contract, the parties recognized the unique features of the Louisiana
law regarding indemnity and agreed that, as to work performed in Louisiana, Cudd would name
Sonat as an additional insured on its insurance policies--thereby employing the only method to
accomplish indemnity in oil well operations in Louisiana. Considering those references to the
peculiar law of Louisiana to be a choice of the law applicable to the indemnity issue, Louisiana law
would apply to the indemnification issue unless either: (1) the chosen state has no substantial
relationship to the parties or the transaction and there is no other reasonable basis for the parties'
choice, or (2) application of the law of the chosen state would be contrary to a fundamental policy
of a state which has a materially greater interest than the chosen state in the determination of the
particular issue and which, under the rule of Section 188, would be the state of the applicable law
in the absence of an effective choice of law by the parties. Restatement (Second) of Conflict
of Laws § 187(2)(a), (b). Louisiana has a substantial relationship to the parties and the transaction
because the well site where the accident occurred giving rise to all liabilities is located in Louisiana. 
Further, we have found that application of Louisiana law would not be contrary to a fundamental
policy of the State of Texas as each of the states have a similar purpose in their indemnity laws--to
restrict abusive indemnity practices in well drilling operations. If we consider the indemnity issue
completely separately from the entire contract, we believe the parties chose Louisiana law to apply
to the indemnity issue and are required to respect that choice. 

 We also recognize, in Chesapeake, two important distinctions: (1) two sophisticated parties
had made an express choice of the applicable law, and (2) the indemnity and insurance clauses in that
contract were specifically drafted to meet Texas law. Chesapeake, 94 S.W.3d at 177. We have no
express choice of law for the entire contract, and the indemnity and insurance clauses in this contract
were expressly designed to invoke Louisiana law for operations conducted in Louisiana. We
ultimately agree with the conclusion of the Chesapeake majority, which was that the parties should
"have what they bargained for." Id. at 180.

 Sonat also cites Panatrol Corp. v. Emerson Elec. Co., 163 S.W.3d 182 (Tex.
App.--San Antonio 2005, pet. denied), which analyzes the particular issue of indemnity, rather than
the entire contract, in determining which state law to apply. In Panatrol, the claim for indemnity
emanated from a statutory right in Texas (Products Liability Act), rather from contractual rights
agreed to by the parties. The court found that the parties' agreement did not have a provision
regarding which state law controlled indemnification and, therefore, the "parties could not have
resolved the issue of whether Emerson must indemnify Panatrol by reference to the invoice." Id. at
187. Whereas, here, the parties included a provision providing for the unique manner in which
Louisiana law allowed indemnity. Further, the court in Panatrol found that Texas was the only one
of the states involved that had a statute authorizing the seller of a defective product indemnification
from the manufacturer. The Texas statute created a new statutory duty. It was determined that Texas
had a strong policy favoring protection of the innocent seller--thus, Texas had the most significant
relationship to the transaction and the parties. Id. at 188-89. Application of Illinois or Missouri law
would have been contrary to a fundamental policy of Texas. Id. at 189. Here, as we have pointed
out, both Texas and Louisiana statutorily regulate oil field indemnity agreements and it is not
possible to conclude that application of Louisiana law is contrary to Texas public policy, but in fact,
the policies of Texas and Louisiana are in accord on the issue of oil field indemnity. See
Chesapeake, 94 S.W.3d at 178 ("because the policies are identical, we do not see how one can
contravene the other"). These distinctions make Panatrol inapplicable to this case. 

 We reiterate: Section 196 of the Restatement provides that, in the absence of a choice of law,
we apply the law where the contract requires a major portion of the services be rendered unless with
respect to the particular issue some other state has a more significant relationship under the factors
set out above to the transaction and parties. Although the particular issue is indemnity, the
transaction is the service contract. Whether we examine the service contract as a whole, as in Maxus,
or the issue of indemnity only, as in Chesapeake and Panatrol, we cannot say that Texas has a more
significant relationship than Louisiana to the issue of indemnity or the transaction of the parties. 
Thus, as the Maxus court concluded that, on balance, the factors required the application of Kansas
law, we likewise find that the factors require the application of Louisiana law to this case. If we
examine the indemnity issue separately, we conclude the parties selected Louisiana law to apply to
the indemnity issue for operations conducted in Louisiana. 

D. Does the Choice of Law Determination Apply to Cudd?

 There is one remaining issue. Sonat has argued in a reply brief that, should we reverse on
this basis in favor of Lumbermens, that cannot and should not inure to the benefit of Cudd because
Cudd agreed not to raise the choice-of-law issue on appeal. We disagree. 

 First: Cudd did not violate its agreement. Both in briefing and at oral argument, counsel
scrupulously avoided even the barest mention of the choice-of-law issue. That issue was raised
solely by Lumbermens.

 Second: Even though Sonat, relying on the Rule 11 agreement that Cudd would not assert
the choice-of-law issue, dismissed with prejudice its claims against Cudd for breach of contract
(failing to invoice Sonat for the insurance premium to become an additional insured on Cudd's
policy), the Texas Supreme Court specifically directed this Court to allow Lumbermens to contest
the choice-of-law ruling. The Texas Supreme Court found that this issue could be dispositive, which
we believe to be the case. Since the Texas Supreme Court authorized the presentation of this issue,
we must determine its merits and apply it to those bound by the judgment. 

 Third: The judgment is not against Lumbermens; it is against Cudd. Lumbermens was not
a party below and is not a party to the judgment. We cannot reverse the judgment without reversing
it as to the party against whom it was taken. Further, for us to render any sort of a judgment
expounding on the law without applying it to this case would fit squarely within the definition of an
advisory opinion. We are prohibited from issuing advisory opinions, the distinctive feature of which
is that it decides an abstract question of law without binding the parties. Tex. Const. art. II, § 1;
see Valley Baptist Med. Ctr. v. Gonzalez, 33 S.W.3d 821 (Tex. 2000). 

 We reverse the judgment and remand the cause to the trial court for further proceedings in
accordance with this opinion.



 Jack Carter

 Justice


Date Submitted: August 24, 2006

Date Decided: September 26, 2006

1. Sonat was the operator of a high-pressure gas well in Bryceland, Louisiana. Sonat hired
Cudd to work on the well. They entered into a contract under which they agreed to indemnify each
other and provide insurance for claims brought by their various employees. The well blew out. Four
Cudd workers were killed. A tort lawsuit was filed in Houston by several workers' families. Two
cases were also filed in Marshall. Sonat ultimately settled all of the tort claims--and then sought
indemnity from Cudd for the settlement amounts--the case before us. 
2. A related opinion is found at Brooks Well Servicing, Inc. v. Cudd Pressure Control, Inc., 850
So.2d 1027 (La. Ct. App. 2nd Cir. 2003).
3. When the parties have made a contractual choice of law, that choice will be given effect so
long as the contract bears a substantial relationship to the chosen state and so long as the parties'
choice does not thwart a fundamental policy of the state whose law would otherwise be applied. See
Desantis, 793 S.W.2d at 677 (adopting rule of Restatement (Second) of Conflict of Laws § 187
(1989), "Law of the State Chosen by the Parties").
4. As described by the Maxus opinion, the use of Kansas law might either void or limit the
obligation to indemnify, while the indemnity agreement was valid under Texas law.
5. The principles referred to are the generic choice of law principles set out for general use in
determining which jurisdiction's law applies. 
6. Sonat dismissed with prejudice its breach of contract claim based on this theory. Sonat
alleged Cudd failed to invoice it for the cost of the insurance to allow Sonat to be named as an
additional insured on its policy. The Texas Supreme Court cited the trial court's ruling that Sonat
was an additional insured under Cudd's policy with Lumbermens. Lumbermens Mut. Cas., 184
S.W.3d at 728 n.8. However, Lumbermens asserts Sonat did not pay the premium and was not an
additional insured. This issue is not before us. 


man', serif">            Fullenweider filed the original action to collect his attorney's fees in the Montgomery County
District Court where the divorce was granted. Clearly, if Fullenweider had merely filed a separate
suit for his attorney's fees, the Montgomery County District Court had jurisdiction. Tex. Const.
amend. V, § 8; Tex. Gov't Code Ann. §§ 24.007–.008, 24.505 (Vernon 2004). It was only because
Fullenweider filed suit in the original divorce action that he was unable to pursue the matter in the
Montgomery County District Court. The Texas Supreme Court held that the mechanism
Fullenweider attempted to use was designed for clarifying and enforcing divorce decrees and did not
relate to any issues other than those related to the division of a marital estate. Brown v.
Fullenweider, 52 S.W.3d 169, 171 (Tex. 2001). Otherwise, by this procedure, the parties would
have been denied the right to a jury trial on the disputed fee issue. Id. The Texas Supreme Court
held Fullenweider had not "properly invoked" jurisdiction. Id. This is not to say that the
Montgomery County District Court was the wrong court with no jurisdiction over a properly
presented dispute of the attorney's fees issue. This is very similar to the situation in Bell v. Moores,
No. 01-94-00826-CV, 1996 Tex. App. LEXIS 734 (Tex. App.—Houston [1st Dist.] Feb. 22, 1996,
no writ) (not designated for publication). In that case, a former spouse attempted to intervene in a
suit against her husband's employer to collect payments due him for writing a software program. Her
intervention was dismissed because she did not have standing. She also filed a bill of review, and
over four years later, after she acquired standing, she attempted to amend the bill of review to include
the claims initially asserted in the intervention. The court of appeals held that Section 16.064 deals
with tolling the statute of limitation when the first suit is filed in the wrong court. In Bell, the court
of appeals held that the trial court lacked jurisdiction because the spouse did not have standing—not
because she filed in the wrong court. Id. at *13. Therefore, Section 16.064 did not apply. Likewise,
here, the trial court did not lack jurisdiction because Fullenweider filed in the wrong court, but
because he filed it in a case in which the judgment was already final and in a proceeding designed
only to divide a marital estate.
            Second, Fullenweider did not bring his original suit "mistakenly." In Turner v. Tex. Dep't
of Mental Health & Mental Retardation, 920 S.W.2d 415 (Tex. App.—Austin 1996, writ denied),
the plaintiff had previously filed an action in federal court, which had been dismissed. The Austin
Court of Appeals assumed for analysis purposes that the federal court dismissed Turner's claim for
lack of jurisdiction. However, the court pointed out that Turner could not be considered to have
mistakenly filed his action in the wrong court. He could not have maintained his Section 1981 and
Section 1983 causes of action in either state or federal court. Rather than mistakenly filing his action
in the wrong court, Turner simply filed the wrong cause of action regardless of where it was filed. 
The court held such mistake was beyond the scope and purpose of the tolling provision at issue. Id.
at 419. 
            Fullenweider could not have maintained his original cause of action for the enforcement of
the divorce decree in any court other than the court of original continuing jurisdiction. Tex. Fam.
Code Ann. § 9.002 (Vernon 1998). To enforce the divorce judgment, filing in that court was not
a mistake, it was statutorily required. Fullenweider filed in a court of proper jurisdiction, but
apparently for strategic reasons, in a procedurally incorrect manner. Therefore, it is likewise beyond
the scope and purpose of the tolling provision at issue. 
            In Clary Corp. v. Smith, 949 S.W.2d 452 (Tex. App.—Fort Worth 1997, writ denied), a party
filed its first action in a county court at law and exceeded the monetary jurisdictional limit of the
court. Rather than amend the pleadings, the party allowed the original action to be dismissed and
refiled with a reduced damage claim. The court there held that Section 16.064 was not designed to
remedy such tactical decisions. The majority opinion distinguishes the Smith case, stating that the
second case was not filed in a "different court." However, the opinion in Smith held that one of the
grounds precluding the use of Section 16.064 was "because there is no evidence that they initially
mistakenly filed their counterclaim in the trial court they cannot rely on Section 16.064(a) to save
their claims from limitations." Id. at 461. Likewise, there is no evidence that Fullenweider
mistakenly filed his original claim. Just as in the Smith case, the filing of the original claim was
based on tactical decisions, but it was certainly not inadvertently or mistakenly filed in the
Montgomery County District Court. Just as in Smith, Fullenweider should likewise not be able to
rely on Section 16.064 to save his claim from limitations.
            The majority refers to the policy underlying statutes of limitations to ensure the timely
presentation of a cause of action. There is also a policy to avoid unnecessary litigation. See Tex.
Beef Cattle Co. v. Green, 921 S.W.2d 203, 208 (Tex. 1996). Fullenweider's claim against Brown
is a simple suit for attorney's fees incurred. As a result of the novel and unorthodox procedure
instituted by Fullenweider to collect these fees, this simple case has thus far been before the trial
court twice, two courts of appeals, and the Texas Supreme Court, when it could have been disposed
of promptly and at much less expense to the parties by traditional methods. 
            Finally, I do not understand why the majority opinion instructs on the distinction between
venue and jurisdiction. The abstract statements are accurate, but unnecessary. Neither of the parties
have raised this as an issue, the Texas Supreme Court opinion in this case does not mention it, and
it has no application to this case. 
            Based on the above, it is my conclusion that the statute of limitations precludes the assertion
of this cause of action and I respectfully dissent from that portion of the judgment and opinion of this
Court.
                                                                        Jack Carter
                                                                        Justice

Date Submitted:          March 11, 2004
Date Decided:             May 4, 2004